HAROLD R. BECKER AND ANOTHER v. GEORGE F. CAMPBELL AND ANOTHER.[1]

January 23, 1942.

No. 33,106.

[1]Reported in 2 N. W. (2d) 129.

J. J. & J. A. *Fahey,* for appellants.
A. E. *Haering,* for respondents.

HILTON, JUSTICE.

The sole inquiry in this action, one to recover possession of a one-half acre tract of land alleged to have been omitted from a deed, is whether the evidence of mutual mistake is so weak that it fails to satisfy the proof requirements of reformation. Has the plaintiff established, by evidence clear and convincing, that there was a valid agreement between the parties that the disputed tract was to be included in the deed but which through mutual mistake was omitted from the description? Fritz v. Fritz, 94 Minn. 264, 102 N. W. 705. The defendants have appealed from an order denying amended findings or a new trial.

At the time of the negotiations of sale, the disputed tract was being operated under a lease from defendant Campbell as a creamery, with appurtenant buildings and equipment. It was part of a larger tract (78½ acres) occupied by him as a farm. From plaintiff's version, it appears that while delivering milk to the creamery one day he was approached by Campbell on the possibility of buying his farm. Plaintiff was asked, "Why don't you buy my farm?" "I didn't know it was for sale," replied plaintiff. "Sure, it is for sale. * * * You better buy it and remember, when you buy this place, this creamery property falls back to the farm." Later they agreed upon a price, but nothing more was said about this smaller tract. The deed was prepared by the cashier of a country bank. Upon arrival there, Campbell announced that he

"had sold them [plaintiffs] the farm," but neither party stated what the description should include. The description was copied by the scrivener from the abstract and an old deed supplied by Campbell, which, we may assume, contained the proper description of the whole tract.

According to defendant, plaintiff, through a real estate agent, sought him out on the possibility of buying the farm and that nothing was said about the creamery property being included in the deed. At no time, testified Campbell, did he intend to convey this creamery property to Becker. Basing his argument largely upon his own testimony, defendant contends that the record is bereft of any convincing evidence which proves an agreement that the disputed tract was to be included in the deed or that there had been any showing of mutual mistake.

But we think other evidence and inferences so much pointed the other way that the trial court was justified in rejecting the defendant's recollection of what happened. The deed was executed in November 1938, and plaintiff went into possession the following spring, about the time that the creamery closed its business doors. A public sale of the buildings and equipment had been ordered by the board of directors. Thereupon, Campbell went to Becker and requested him to take measures to prevent the sale. Campbell "said I should make a stop on the sale because they [defendants] turned this creamery over to me and I am the fellow [who] has got to stop the sale because it belongs to me." Campbell urged Becker to consult a lawyer and further promoted the matter by going along for the consultation. In response to a question of what happened at the law office, Becker stated: "Well, Mr. Campbell claimed that the creamery board could not sell the building and that I was the fellow claiming against them to hold the building." Two other times they returned to the law office on the matter. They were then informed by the attorney that the records revealed that record title to the one-half acre tract still remained in Campbell's name and that Becker had no ground to protest the sale. The auction was held, and Campbell bought in the buildings and Becker some of the equipment.

Such extraordinary conduct upon the part of an alleged owner of a tract of land from which buildings are being sold at public auction would seem to require rather convincing explanation. No attempt was made by defendant's counsel to suggest a rational explanation why Campbell, being owner of the one-half acre tract and under the belief that the buildings and equipment being sold belonged to the fee owner, should urge Becker, known by Campbell not to be the owner, to bring the action to stop the sale. Defendant's only suggestion was that he was a stockholder and wanted to keep the creamery going. But his declared reasons for preventing the sale hardly reconcile with his claimed interest as a stockholder. It seems fairly clear from this record that Campbell desired to prevent the sale because he believed that the one owning the fee was entitled to the fixtures upon the land, and this for the reason that the lease to the creamery contained a reversionary clause effective upon the cessation of business.

When this highly significant point is considered in relation to the plaintiff's testimony as to what transpired at the creamery, we think that ample showing established that the parties intended the one-half acre to be included in the deed and that both thought that it was included until they were otherwise informed by the attorney. Furthermore, Becker and Campbell were well acquainted, and Becker was familiar with the Campbell farm. So as to the contention that no specific agreement had been made that the one-half acre was to be part of the grant, it may be answered that, under the circumstances, it was specific enough. The one knew what he was selling, the other what he was buying. The creamery property came in for special mention as part of the inducement. Certainly their mutual understanding and expectation was clear. Though subject to the lease, the one-half acre tract was obviously a part of "my farm," to which defendant referred at the time of the negotiations.

Order affirmed.

Mr. Chief Justice Gallagher, being engaged on the pardon board, took no part in the consideration or decision of this case.