CHARLES CHRONES *et ux. vs.* EDWARD WADE.

JANUARY 16, 1953.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CONDON, J. This is an action of trespass and ejectment for the possession of a certain tenement held by defendant under an oral letting from week to week at a rent of $13.50 payable weekly in advance. The plaintiffs based their right of action on the ground that the stipulated rent was due and in arrear for fifteen days and hence under general laws 1938, chapter 454, §1, they were entitled to recover possession. The case was tried before a justice of the superior court sitting without a jury, who found that defendant was not in arrear of rent as alleged. The plaintiffs have brought the case here on their bill of exceptions containing exceptions to such decision and to two rulings of the trial justice admitting in evidence certain testimony and exhibits.

The question raised by the exception to the decision is essentially this: Is a tenant under an oral letting from week to week obliged, in the absence of an agreement as to the place where the stipulated rent is to be tendered, to seek out the landlord and tender the rent on the day it is due, or has he legally complied with his obligation if he has it ready on the rented premises on that day and is willing then and there to pay the landlord? The trial justice held that the place of payment was the rented premises and he found on the evidence that defendant was ready, able and willing to pay the rent there on the day it fell due and therefore he was not in arrear.

The plaintiffs contend that the trial justice erred in both respects. They argued here that the law placed on the tenant the burden of making payment and that like any other debtor he must seek out his creditor and pay him in order to avoid default. They contend further that by virtue of G. L. 1938, chap. 454, §1, they were not under any duty to demand the rent from defendant and when he suffered it to remain due and unpaid for a period of fifteen days he lost the right to possession.

On the facts and circumstances admitted in evidence we

are of the opinion that neither of the above contentions is tenable. The rule at common law is that in the absence of stipulation, statute or custom to the contrary rent is payable on the demised premises. *House* v. *Lewis,* 108 Neb. 257; *Walter* v. *Dewey,* 16 Johns. 222. 52 C.J.S., Landlord and Tenant, §718 (b), p. 582; 32 Am. Jur., Landlord and Tenant, §§467, 859. That is also the rule in this state. *Moran* v. *Lavell,* 32 R. I. 338. In that case this court quoted with approval from *Chapman* v. *Harney,* 100 Mass. 353, the following: "Where no place of payment is named, a tender upon the land is good, and prevents forfeiture."

In the case at bar there was no stipulation in the oral letting which would alter that rule, and the custom of the parties in the actual payment of the rent for almost two years prior to the controversy was consistent with the rule. In that connection it appears from the evidence that on April 15, 1950 defendant hired the first-floor tenement of plaintiffs' dwelling house at 145-147 Sayles avenue, Pawtucket, and paid the first weekly rent of $13.50 in advance by check to plaintiff Charles Chrones in the kitchen of such tenement.

The rent for each of the next succeeding two weeks was collected by him at defendant's business office. Thereafter, plaintiffs having moved into the second-floor tenement, the rent was collected by the plaintiff Charles Chrones in defendant's kitchen on each Sunday succeeding the rent day. Occasionally defendant handed the rent check to him in the common hallway. Sometimes, for example, after plaintiff had been away on vacation, he would call at defendant's kitchen upon his return and pick up the checks which had accumulated in his absence. The defendant always paid the rent by check which was made out at his office by his wife on Friday of each week and brought home by her and placed on a radio shelf in the kitchen until it was called for by plaintiff Charles Chrones on the following Sunday.

This method of paying the rent was acquiesced in by plaintiffs without objection until the Sunday following the

second rent day in February 1952. On that day and on the two next succeeding Sundays the checks though ready as usual were not called for. However, on an afternoon subsequent to rent day February 16, 1952 and prior to the next rent day February 23 defendant's wife having occasion to call at plaintiffs' tenement to inquire concerning the repair of a light switch took the two uncollected rent checks from the radio shelf intending to give them to plaintiffs. She was unable to deliver the checks as no one responded to her knock on plaintiffs' door. She then returned to her tenement and replaced the checks on the shelf. The plaintiff Charles Chrones did not call for them nor did he call on the Sunday following the next rent day, February 23, 1952, when a third check for the rent due on that day was placed on the shelf.

On February 25, 1952 there had elapsed a period of fifteen days during which plaintiffs had collected no rent. On that day defendant, having noted the three checks on the shelf and hearing plaintiff Charles Chrones coming down the stairs, went out in the hallway and tendered the checks to him, which he refused to accept saying, according to defendant: "I have been waiting for this opportunity. I don't want 'em." Thereafter on February 28, 1952 plaintiffs had their attorneys serve defendant with a notice to quit his tenement on the ground of nonpayment of rent for more than fifteen days.

The plaintiff Charles Chrones testified that he had a conversation with defendant in the yard in September or October 1951 in which he told defendant that because of some friction with him or his wife the rent was henceforth to be paid at plaintiffs' tenement. He further testified that thereafter he never collected any rent in defendant's kitchen and that the rent was paid in the hallway or out in the yard. The defendant testified positively that no such conversation took place; that, except on a few occasions which he explained, the rent was always paid by check in his kitchen; and that such plaintiff regularly called there each

Sunday to collect it until the Sunday next after the rent day of February 9, 1952.

The defendant's testimony to the above effect was corroborated by his wife. His testimony as to whether plaintiff Charles Chrones ever called at defendant's kitchen for the rent after October 1951 was also corroborated by a disinterested witness, Mrs. Blinkhorn. She testified that she was present in defendant's kitchen on the Sunday following Thanksgiving 1951 and saw such plaintiff come there and collect a check for the rent. Another disinterested witness Rudolph Skarka testified that he was in defendant's kitchen on several Sundays when plaintiff Charles Chrones called for the rent, but he admitted that he was not positive that any of those calls was after September or October 1951.

On this question of where the rent was customarily paid and on the further question whether there had been a change in the place of payment acquiesced in by the parties the weight of the evidence clearly supports defendant rather than plaintiffs. Moreover there is involved here a question of credibility between defendant and his wife on the one hand and plaintiff Charles Chrones on the other. On that question the trial justice, by reason of his opportunity to see the witnesses as they testified, had a clear advantage over this court in determining where the truth lay. He has resolved that question definitely in favor of defendant. Indeed the trial justice expressly found that plaintiffs, in order to be able to bring the instant action, deliberately refrained from collecting the rent at defendant's premises as they had done regularly theretofore. In his rescript, after reciting the substance of the conflicting testimony, he expressly stated twice that he believed defendant; and thus he inferentially rejected plaintiffs' testimony. From our examination of the transcript we cannot say that he was clearly wrong.

It thus appears that by the conduct of the parties as well as by the general rule of law the place of payment of the rent in this particular case was defendant's tenement. The

evidence also indisputably shows that defendant's check was, from the beginning of the tenancy, accepted without objection by plaintiffs as good and lawful tender of the rent; that a check for the rent due on each rent day was ready for collection on each of such days during the fifteen-day period; and that plaintiffs purposely refrained from collecting the checks notwithstanding defendant's willingness to deliver them. In such circumstances the trial justice did not err in holding as a matter of law and fact that defendant was not in arrear of rent and therefore not subject to ejection for nonpayment of rent as plaintiffs alleged. *Marshall* v. *Partyka,* 98 Conn. 778; *Lombardo* v. *Clifford Brothers Co.,* 139 Md. 32.

The plaintiffs, however, contend that, regardless of the place of payment whether established by law or by the conduct of the parties, it was the duty of defendant to pay the rent when it fell due without demand because G. L. 1938, chap. 454, §1, expressly provides: "If, in any case of letting, whether by writing or parol, the stipulated rent, or any part of the same, be due and in arrear for a period of 15 days, whether demanded or not, the landlord or reversioner may re-enter and repossess himself of the lands, buildings or parts of buildings let, or recover possession of the same from the tenant, or any person holding under him, discharged from the lease."

The very language of the section refutes the contention. It applies only to a case where the rent is in arrear, and cannot reasonably be construed to abrogate or alter the well-established rule that a tender of the rent upon the demised premises is good and prevents a forfeiture where no place of payment is named in the lease or otherwise agreed to by the parties. *Moran* v. *Lavell, supra.* Indeed it was intended to serve an entirely different purpose.

The section was originally enacted in 1857 and appeared in the Revised Statutes of 1857 as chap. 205, sec. 6, and in successive revisions down to the Public Statutes of 1882 where it appeared as chap. 232, sec. 6, in the following form:

"If in any case of letting of lands or tenements, whether by writing or parol, the stipulated rent, or any part of the same, be due and in arrear for the period of fifteen days *after demand* made of the same from the tenant or his assigns, by the lessor or person entitled to the reversion, the landlord or reversioner may re-enter and repossess himself of the lands and tenements let, or recover possession of the same from the tenant or his assignee discharged from the lease." (italics ours)  In the revision of G. L. 1896, chap. 269, sec. 7, it was amended to read as it does now in the first above-quoted language of G. L. 1938, chap. 454, §1.

The section was designed to grant to the landlord a right which in the absence of a stipulation in the lease he did not have at common law, namely, to re-enter or recover possession of the demised premises for nonpayment of rent without demand.  At common law, if the lease lacked an express condition of forfeiture in case of the nonpayment of rent, the tenant's mere neglect or refusal to pay the rent did not work a forfeiture of the term.  *Hodgkins* v. *Price,* 137 Mass. 13; *Sparks* v. *Lorentowicz,* 105 N.J.Eq. 18. 52 C.J.S. Landlord & Tenant, §718 (a) (b), pp. 581, 582; 32 Am. Jur., Landlord & Tenant, §852, p. 723.

However, while granting the landlord a new right as a matter of law the section, as it stood in 1882, restricted the exercise of that right by requiring the landlord to *make demand* for his rent *after* it had become due and to wait until it was in arrear for fifteen days thereafter before he could re-enter or sue to recover possession.  In 1896 the legislature eliminated that requirement so that the statute now merely provides that a defaulting tenant has a period of fifteen days after default within which to make a tender of the arrear of rent to avoid a forfeiture of his lease, and if he fails to do so the landlord may re-enter or sue to recover possession without compliance with the formal, technical requirements of a demand at common law.  See *Moran* v. *Lavell, supra.*  2 Taylor Landlord and Tenant

(9th ed.) §493, p. 84. But the tenant's rent must first be legally in arrear before the. statute thus operates in favor of the landlord.

In the case at bar that requirement is not met. The defendant was ready and willing to pay the rent on each day it fell due and actually had the checks therefor available on the rented premises for the landlord to collect not only according to the governing rule of law but also in conformity to the custom and conduct of the parties. If we were to construe the statute as the plaintiffs contend, a landlord could deliberately refuse to collect his rent at the place of payment established by agreement or custom and thus force the tenant to seek him out if he, the tenant, would avoid a forfeiture. Under such a construction, a provision in a lease expressly designating the place where the rent was payable would become a dead letter. Obviously to so construe the statute as to produce such a result would be absurd. The plaintiff's exception to the trial justice's decision is therefore overruled.

We now come to plaintiffs' two exceptions to the admission of certain testimony and exhibits. Over their objection defendant testified that in June 1951 plaintiffs petitioned the federal area rent office for permission to raise defendant's rent to $22 per week and that such petition was denied on September 15, 1951. The plaintiffs contend that the only purpose of such testimony was to show a motive for evicting defendant and was therefore irrelevant and inadmissible.

The trial justice, however, appears to have admitted such testimony also as bearing on the question whether plaintiff Charles Chrones was "telling it just as it is," or in other words whether he was telling the truth in his testimony that he did not call for the rent after September 1951 because he had notified defendant of a change in the place of payment and therefore he had not deliberately refused to collect the rent.

The question whether such testimony really went to the

credibility of Chrones is a close one. However, assuming that it did not and therefore was inadmissible, we are not prepared to say it was prejudicial error to admit it in the circumstances here where there was no jury that might be misled and where there was other ample evidence upon which the trial justice as a trained observer of witnesses and an experienced trier of facts could have reasonably found that plaintiff's testimony was lacking in credence. For this reason plaintiffs' exception to the admission of such testimony is overruled.

The three checks for the rent due on February 9, 16, and 23, which defendant and his wife testified had been made out on each preceding Friday in his office and brought home and placed on the radio shelf were admitted as exhibits. The plaintiffs had objected to the introduction of these checks as evidence in the course of the examination of Mrs. Wade. The trial justice allowed them to be used to show what she had done on the Sundays following those rent days. She had testified that on each of those Sundays a check which she had prepared the preceding Friday was on the radio shelf in her kitchen awaiting the landlord's call to collect them.

The plaintiffs' objection in the superior court was that checks are not good legal tender. Ordinarily that is so, but where in such circumstances as here checks were accepted from the beginning of the tenancy by the plaintiffs as good tender an objection to their admission on that ground is not valid. The plaintiffs have briefed and argued in this court for the first time a further ground of objection, namely, that the tender of the checks for rent more than fifteen days in arrear was ineffectual under our law. We need not consider that objection because each of those checks was in law good tender on the demised premises at the time each week's rent fell due and therefore could not be considered as tendered only after such rent was in arrear. "If money is to be paid or goods are to be delivered at a certain place, a tender may, and must, be made at that

place, and a tender at the place is sufficient, although the one to whom it is to be made, or the obligation to be paid, be absent at the time." 62 C.J., Tender, §23, p. 666. The plaintiffs' exception to the admission of such checks on either ground is therefore without merit and is overruled.

All of the plaintiffs' exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the decision.

*Corcoran, Foley & Flynn, Francis R. Foley*, for plaintiffs.

*Quinn & Quinn, Joseph R. Weisberger*, for defendant.