## Max Aiken *vs.* Olympia Realty Corporation.

APRIL 15, 1954.

PRESENT: Flynn, C. J., Baker, Condon and O'Connell, JJ.

BAKER, J.   This is a bill in equity brought by a lessee seeking to have the respondent lessor enjoined from further prosecuting eviction proceedings and for other relief.   The cause was heard on its merits in the superior court on bill, amended answer in the nature of a cross-bill, replication and proof.   The trial justice entered a decree denying and dismissing the bill of complaint and granting respondent certain relief under its cross-bill.   From the entry of that decree complainant duly appealed to this court.

The pertinent paragraphs of the decree are as follows: "1. Complainant's Bill of Complaint is denied and dismissed. 2. Complainant's lease is ended on the ground of default in the payment of rent.   3. Complainant is ordered to vacate room No. 5 of the premises at 46 Main Street, Woonsocket, R. I."   Under the decree two rather narrow questions are raised.   The first is whether, under his bill, complainant made out a case entitling him to the relief prayed for.   The second is whether respondent was entitled to the relief granted under the cross-bill.

It appears from the evidence that complainant operated a restaurant and bakery on the first floor of the Olympia Building which is owned by respondent and is located in the city of Woonsocket in this state.   Under date of January 10, 1948 by an instrument in writing respondent leased to complainant room No. 5, which is on the second floor of such building and directly above the rear of his restaurant and bakery.   That room is the only portion of the premises involved in the present proceeding.   The lease was for a term of eight years from December 1, 1947 to November 30, 1955 and contained a certain renewal privilege.   The rent was "payable on the first business day of each month at the rate of Twenty-five ($25.00) Dollars per month payable in advance."   There was no express provision therein stating where the rent should be paid.

The lease also contained the following terms:   "Said Lessee hereby agrees * * * that for any condition broken,

the said Lessor so choosing, may enter upon and resume possession of said premises without prejudice to his other rights or remedies against the said Lessee hereunder. The said Lessee accepts the demise and covenants to observe and perform the conditions aforesaid and also that on the entry of the Lessor for condition broken * * * the legal possession of the premises shall revest in the said Lessor and the Lessee will immediately leave the same in as good order and condition as when received * * *."

Under date of October 7, 1952 a letter was sent by respondent's attorney to complainant giving him notice as follows: "I represent Olympia Realty Corporation which executed a lease in your favor on January 10, 1948 of Room No. 5 in the Olympia Building. Please take notice that the lessor hereby terminates said lease for non-payment of rent for two months." In that connection there was evidence on behalf of respondent that its treasurer had called for the September 1952 rent three times prior to the tenth of that month but complainant's check was not ready. The treasurer testified as follows on that point:

"Q. Calling your attention to the year 1952, how was the rent collected from Mr. Aiken? A. Well, I did stop in on the first of the month. I generally make my deposits the second. I stop in the first to see if I can't make it all in one deposit; of course, I couldn't get it, so I would have to go to the bank sometimes as many as three times. Q. Would he give you various excuses? A. He will make out a check, then I go down to get it, he wasn't around; then I asked the son or the clerk, 'Is my check ready for me?' 'No.', so I went back. It finally got to a point I was after the rent three times, September, and I told them that I am not coming back for it. Q. You always went on the first of the month? A. Very close to the first of the month. Q. And you never received your rent at that time? A. Hardly ever."

In October the treasurer did not call for the rent and no attempt was made by complainant to pay what was then

overdue until after he had received the above notice. About October 10 complainant allegedly tendered the checks for September and October, not to respondent's treasurer but to a man claimed to be an officer of that corporation. Such person did not testify. The tender, if made, was refused.

The instant bill was filed October 17, 1952. It is complainant's contention that the facts did not warrant the termination of the lease by respondent in accordance with the above notice. In substance he argues that for several years prior to September 1952 respondent's treasurer had been in the habit of calling at complainant's office in the Olympia Building about the middle of the month and getting the check for the rent which was due the first business day of that month and that this had become the recognized practice and course of conduct of the parties. Rent checks in evidence covering several years tended to show that they were seldom if ever made out and ready for delivery on the date when due. For the most part they were dated much later in the month and occasionally covered two months' rent.

On the other hand respondent contended that the evidence did not show any such recognized practice and course of conduct in respect to the payment of rent, but that its treasurer was compelled to go for the rent checks repeatedly, often several times a month to get them and that they were never ready on or about the first business day of the month. As a result of such conduct on the part of complainant, respondent decided in October 1952 to enforce its alleged rights to terminate the lease for nonpayment of the rent.

It developed at the trial, as above indicated, that the evidence on this important issue was in complete conflict. In passing on the evidence and in making his decision, the trial justice stated he did not believe that any tender of rent was made in October 1952; that complainant maintained a business office in another part of the building directly opposite respondent's office; and that the rent

checks were customarily given to its treasurer Maurice Safner. The trial justice also pointed out that complainant's "veracity was seriously challenged" because of testimony relating to an incident in connection with the attempted delivery to him of a certain registered letter. The decision of the trial justice contains the following language: "I find that on or about October 7, 1952 when the notice terminating the tenancy was mailed and received the complainant was in arrears of rent since September 1, 1952; that this constituted a breach of condition; that prior thereto and during September, 1952 Mr. Safner had made adequate demand for payment which had been refused; that there is nothing in the conduct of lessor or its agents which misled complainant; that the failure to pay rent or to make tender for September and October, 1952 when due, was not waived by respondent."

In an equity cause the findings of fact made by the trial justice on conflicting evidence are entitled to great weight and ordinarily will not be disturbed by this court unless they are clearly wrong. In passing upon the weight of the evidence and the credibility of the witnesses he has the advantage, which we do not have, of seeing and hearing them testify. We have examined the pertinent evidence herein and we cannot say that his findings of fact are clearly wrong.

However, in support of complainant's position that such findings are erroneous it is argued that the trial justice misconceived the evidence in several respects. We have given this point consideration and are unable to agree with complainant that the trial justice misconceived any material evidence in reaching his decision. It is not necessarily a misconception of evidence merely because he places upon it a different meaning, if such is reasonable, than that urged by the party complaining, or that he gives more weight to certain reasonable inferences therefrom than complainant would give.

The complainant has also cited to us, as controlling, the cases of *Chrones* v. *Wade,* 80 R. I. 154, 94 A.2d 242, and *Berarducci* v. *Diano,* 60 R. I. 305. In our opinion those cases are clearly distinguishable from the instant case and are not in point here. Assuming that the rent was payable in complainant's office, there was ample testimony to support the finding of the trial justice that the checks were not paid, tendered, or ready on the rent days. In this vital respect the instant case differs from the *Chrones* case where the evidence showed that the tenant had the rent ready for collection when due on the rent day, and the court so found. There the findings of fact were favorable to the tenant. Here they are against him. The *Berarducci* case deals with the question of estoppel. In our judgment the evidence and findings here do not require, as a matter of law, the setting up of an estoppel in favor of complainant against respondent's conduct in the circumstances, or the making of a finding that respondent had waived any of its rights. Therefore, in our opinion there was no error in the decision of the trial justice denying and dismissing complainant's bill.

No procedural question has been raised by either party in this cause as to the cross-bill. They have both had their day in court on the issues presented. After the hearing on the prayer for the granting of a preliminary injunction a decree was entered without objection which contained the following provision: "1. That the respondent corporation is enjoined from proceeding with action to evict the complainant in the District Court, but shall prosecute its case if it desires, in this equity cause." No appeal was taken from the entry of that decree.

Apparently the parties recognized the broad, general principle that when equity takes jurisdiction it attempts to dispose of all the issues properly raised in the cause in order to prevent multiplicity of suits. It is our judgment that in the circumstances we should not now compel re-

spondent to go into another forum to obtain the relief asked for and given under its cross-bill where the factual issues controlling the prayers of both the bill and cross-bill have been fully presented by the parties and passed upon by the court. It is our opinion that on the merits there was evidence to support the decision made by the trial justice under the cross-bill.

The complainant's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Bernard C. Gladstone*, for complainant.

*Edward F. Dwyer, Irving I. Zimmerman*, for respondent.