HERMAN J. FRITZ v. HERMAN FRITZ and Others.[1]

February 24, 1905.

Nos. 14,130—(179).

**Reformation of Instrument.**
    Before a court of equity will interfere to reform a written instrument, it must appear, substantially as alleged in the pleadings, that there was in fact a valid agreement sufficiently expressing in terms the real intention of the parties; that there was in fact a written contract, which failed to express such true intention; and that this failure was due to mutual mistake, or to mistake of one side and fraud or inequitable conduct of the other.

**Evidence to Warrant.**
    These facts must be established by competent evidence, which is consistent and not contradictory, clear and not equivocal, convincing and not doubtful. Mere preponderance of testimony is not sufficient.

1 Reported in 102 N. W. 705.

**To Whom Granted.**

Such relief will be extended to those only who have not by their conduct (as laches, negligence, or otherwise) put themselves in such a position as to render it unjust to change the situation, especially when such change might injuriously affect the rights or status of innocent third parties.

**Pleadings and Evidence Insufficient.**

In this case a court of equity will not reform a contract and deeds running to a complainant (unable to read or write the English language) and also to another person so as to make the former sole grantee as to a part of the land described therein, because the pleadings and evidence show failure to comply with any of these conditions precedent to such relief.

Appeal by plaintiff from an order of the district court for Chippewa county, Qvale, J., denying a motion for a new trial. Affirmed.

*Mead & Robertson,* for appellant.

*C. A. Fosness* and *B. H. Bowler,* for respondents.

JAGGARD, J.

This is a proceeding to reform a certain contract and deeds on the ground of an alleged mutual mistake.

On June 16, 1896, the owner of certain lands signed a crop contract for sale of one quarter in a section 27 and of another quarter in a section 28 to Herman J. Fritz, the appellant here, and the plaintiff in the court below. Subsequently some unknown person—without authority traced to plaintiff—inserted as an additional grantee the name of defendant Herman Fritz, the father of plaintiff. This was done after the delivery of the contract, and apparently before an attempt was made to record it. That attempt failed. Thereupon the father signed the contract which the plaintiff had previously signed. It was thereupon witnessed and acknowledged on May 26, 1897, and was recorded on June 7, 1897. On May 25, 1901, the vendor delivered two deeds, both running to father and son, the one conveying the quarter in section 27 and the other the quarter in section 28. To secure the unpaid purchase price, both the son and the father (the mother joining) executed four mortgages on May 25, 1901. This action was brought on December 9, 1903, by plaintiff against Herman Fritz and the vendor of the land who disclaimed, and against defendants Fred. Hodgdon and wife and M. C. Bowler, who claim under execution sales on judgments against Her-

man Fritz. The amount of the value of the land is considerably greater than the amount of the claim of the defendants.

The action was tried by the court without a jury. At the close of plaintiff's testimony both parties rested. The action was dismissed by the court. From an order denying motion for new trial, plaintiff appealed.

The determination of the issues in this case involves the application of well-settled and elementary doctrines of equity. (a) Before a court of equity will interfere to reform a written instrument it must appear, substantially as alleged in the pleadings, that there was in fact a valid agreement sufficiently expressing in terms the real intention of the parties; that there was in fact a written contract which failed to express such true intention; and that this failure was due to mutual mistake, or to mistake of one side and fraud or inequitable conduct of the other. (b) These facts must be established by competent evidence, which is consistent and not contradictory, clear and not equivocal, convincing and not doubtful. Mere preponderance of testimony is not sufficient. (c) Such relief will be extended to those only who have not by their own conduct (as laches, negligence, or otherwise) put themselves in such a position as to render it unjust to change the situation, especially when such change might injuriously affect the rights or status of innocent third parties. 2 Current Law, 1492, 1493, 1496, 1497; Bishop, Cont. §§ 707, 710; Mikiska v. Mikiska, 90 Minn. 258, 95 N. W. 910; Williamson v. Carpenter, 205 Pa. St. 164, 54 Atl. 718. These principles are so obvious and elementary as to render further citations unnecessary. The plaintiff has failed to bring his case within any of these rules.

1. The allegations of his petition are in material matters partially confirmed and partially contradicted by the testimony. The petition alleges ownership of the quarter in section 28 by himself exclusively, and the quarter in section 27 jointly by him and his father. Some proof tended to show ownership of this quarter in section 28 by him exclusively and the other quarter by his father exclusively. Other proof tended to show claim of exclusive ownership by him of both quarters.

2. The testimony introduced is contradictory, equivocal, and most doubtful. It results in a preponderance against plaintiff's contention.

It is not sufficient to move a jury. It wholly fails of the clear, precise, and indubitable character necessary to move a chancellor. Williamson v. Carpenter, supra. Plaintiff testifies that both quarter sections were, according to agreement with the vendor, to have been contracted and deeded in his name only, and that he believed that this had been done, until shortly before the commencement of this action, when he discovered that both ran to him and his father jointly. None the less the plaintiff admits that he knew that his father signed the contract, and with his wife (the mother) joined in execution of purchase-money mortgages; that his father swore in another lawsuit, in which he was a witness, that the father owned one quarter, and that his father's possession involved claim of title. So far as the deeds are concerned, he is contradicted by his vendor, his own witness; for, while the testimony of the latter is confused, uncertain, and inconsistent, it is still evidence of his understanding from father and son that he was to "deed the boy the quarter in section 28 and the old gentleman the quarter in section 27." The scrivener who drew the deeds (also called by plaintiff) explained to both father and son that it was impossible to draw one deed to one quarter to the father, another deed to the son for the other quarter, because the contract ran to both, and that, in order to make title to each quarter as they wished it, they would have to quit-claim to each other. He offered to draw such papers free of charge.

There are other contradictions and inconsistencies as to facts concerning possession and payment and other matters. Realizing the difficulties in his case, a part of which has been indicated, plaintiff's counsel ingeniously abandoned the attempt to reform the contract and deeds so as to make them conform to his largest claim, and finally asked for reformation as to the quarter in section 28, which he insists the testimony shows plaintiff owned exclusively. Such a contention is obviously inconsistent with the allegations of the petition and with the plaintiff's own evidence. It merely serves to emphasize the failure to show what was the true agreement to be reformed. Proof of its terms is as much wanting as evidence that there was in point of fact any mutual mistake.

3. Finally, the plaintiff, by his own conduct, has put himself beyond the proper exercise of equitable discretion on his behalf, irrespective of the rights or status of defendants. The ground of excuse

for his ignorance of the true state of the contract and deed is that he was unable to read or write the English language, although he could sign his name. It does not appear that when his father signed the contract and the purchase-money mortgages he did not understand the significance of a signature at the usual place for a signature of parties, as distinguished from witnesses. The most casual observation of the contract could scarcely have failed to note the difference in penmanship, ink and place on line, between his name and that of his father's on the contract. The contract was in his possession from about June 16, 1896, and the deeds from about May 25, 1901, until November, 1903, before he discovered the mistake. There were many occasions on which it was his duty to have had the instrument read to him by some one in whom he had a right to place confidence. "The law * * * will not undertake the care of persons who will not, with the means at hand, take care of themselves." Commissioners v. Younger, 29 Cal. 172; 2 Kent, Com. 484; 1 Story, Eq. § 200a; Comstock v. Comstock, 76 Minn. 396, 79 N. W. 300; Wall v. Meilke, 89 Minn. 232, 237, 94 N. W. 688; Quimby v. Shearer, 56 Minn. 534, 539, 58 N. W. 155; Marcotte v. Hartman, 46 Minn. 202, 48 N. W. 767; Hawkins v. Hawkins, 50 Cal. 558, 560; Weller's Appeal, 103 Pa. St. 594, 599; McKinney v. Herrick, 66 Iowa, 414, 23 N. W. 767.

Many circumstances obtruded the knowledge of the so-called mistake upon plaintiff. But for years he succeeded, according to his own testimony, in eluding the intelligence which was pursuing him. This may have been vigilance on his part, but it was in the wrong direction to lead him through the portals of a court of equity. The immediate cause of his enlightenment is not disclosed. The defendants did not introduce evidence of their rights under the execution certificates. It does appear, however, that his knowledge of the mistake reached him at the time one of his counsel was with him at the county seat during the session of the district court, November 21, 1903. His counsel showed him the record. Then he understood. In the light of all the testimony he is clearly not entitled to the relief demanded, without regard to rights of defendants except the right to dismiss the case.

This view of the case renders it unnecessary to consider the other exceptions or assignments of error.

Order affirmed.