**COMMISSIONER OF INTERNAL REVENUE v. ALLEN.**

No. 7050.

Circuit Court of Appeals, Third Circuit.

Dec. 22, 1939.

Edward H. Green, of New York City, Lawrence A. Baker, of Washington, D. C., and John F. Dooling, Jr., of New York City (Sullivan & Cromwell, of New York City, of counsel), for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and Richard H. Demuth, Sp. Atty., of Washington, D. C., for respondent.

Before BIDDLE, JONES, and BUFFINGTON, Circuit Judges.

JONES, Circuit Judge.

The question in this case is whether a minor's transfer of property, without valuable consideration, in trust for others, made prior to the effective date of the Gift Tax Act of 1932, is so inchoate and imperfect, because of the minor's legal right to disaffirm during minority and for a reasonable period thereafter, as to render the transfer not taxable as a gift until the year in which the minor attained majority, having failed to disaffirm.

The Board of Tax Appeals, agreeing with the taxpayer's contention, held that the transfer was complete as an executed gift at the time the trust was created; that the minor settlor's right to disaffirm was not the vested power "to revest in the donor title to such property" contemplated by Section 501(c) of the Revenue Act of 1932, 26 U.S.C.A. § 550 note; and that the gift was, therefore, not subject to tax. It is that decision which we now have for review on the petition of the Commissioner of Internal Revenue.

The material facts in the case are as follows:

On June 4, 1932, Dorothy Anne Dillon (now Dorothy A. D. Allen, the respondent), a resident of New Jersey, made a transfer in trust by executing and delivering an indenture transferring the securities specified therein, and in accordance with its terms, to the trustees named in the indenture. On the same date, the trustees, consisting of the settlor's father, her brother and a certain bank, qualified to act as trustee in New Jersey, accepted the trust.

At the time of making the trust, the settlor was a minor and did not attain her majority until October 9, 1933 [1].

By the terms of the indenture the entire net income of the trust estate was made payable to the settlor's father for life, then to her mother for life, and then to her brother for life, with remainders over in the income, for a time, and, later, in the corpus to the children and the issue of any deceased children of the brother, and, failing such, then to the children and the issue of any deceased children of the settlor.

The indenture also provides that the trust shall be governed in accordance with the laws of New Jersey.

The transfer appears to be absolute on the face of the indenture which contains no express reservation of power, on the part of the settlor, to revoke or amend the trust.

Under the law of New Jersey, as elsewhere generally in this country, a minor has the legal right to avoid his contracts and conveyances. Such right endures for a reasonable time after the minor has reached his majority. What constitutes a reasonable time after majority for an act of disaffirmance, being ordinarily a question of fact, usually depends on the circumstances of the particular case. For a recent tabulation of the rules in various States, see Spencer v. Lyman Falls Power Co., 109 Vt. 294, 196 A. 276, 278.

The Court of Chancery of New Jersey has held that the time within which the acts of a minor may be disaffirmed after majority may extend for the periods prescribed by the New Jersey statute of limitations for actions real and actions personal, respectively, although the right to disaffirm may be lost earlier by conduct on the part of the emancipated minor amounting to ratification or constituting an estoppel to disaffirmance. Mott v. Iossa, 119 N.J.Eq. 185, 192, 181 A. 689. Unquestionably, the respondent in the instant case, by disaffirming, could have avoided her transfer of June 4, 1932, and thereby have re-

[1] The indenture takes cognizance, in several instances, of the settlor's then minority. Thus it provides that, if the settlor should die prior to *October 9, 1933*, the trust should immediately terminate and the principal of the trust fund should be paid over and distributed by the trustees in accordance with other dispositions specified in the indenture; and, further, the power given to the trustees to encroach upon the trust fund in favor of the beneficiaries (subject to certain directions) "even up to the whole amount of such principal" is expressly limited, in its exercise by the trustees, to any time after *October 9, 1933*.

vested in herself title to the trust property, at any time until she attained her majority on October 9, 1933, and for some period of time thereafter.

The Commissioner, deeming that the transfer became consummate as a gift on October 9, 1933, when the settlor attained her majority and failed to disaffirm, and that it was therefore taxable under Section 501[2] of the Revenue Act of 1932, requested the respondent to file a gift tax return for 1933 reflecting the transfer. This, the respondent did, at the same time denying any liability for tax on account of the gift. The gift tax provisions of the Revenue Act of 1932 did not become effective until June 6, 1932, two days after the execution and delivery of the respondent's trust deed.

The decision in Burnet v. Guggenheim, 288 U.S. 280, 53 S.Ct. 369, 370, 77 L.Ed. 748, controls this case. What was said there, with respect to the unreality and mere formality of a "gift" where a power to revoke is vested in the donor, applies with equal force here. Throughout the donor's minority, her transfer remained "inchoate and imperfect". It was not until she attained her majority and failed to disaffirm that her undeniable and absolute power to nullify the transfer and to revest in herself title to the trust property terminated. When that occurred, the gift became consummate and, at the same time, subject to tax under Section 501(a) of the Revenue Act of 1932.

Because the power to revoke, in the Guggenheim case, was expressly reserved to the settlor by his instruments of grant, while, in the present case, it was reposed by law, the respondent seeks to distinguish the two cases on the difference in the manner in which the powers respectively arose. No such distinction is anywhere suggested in the Guggenheim case; nor are we able to see how it could be validly asserted. The difference in the inception of the powers is merely one of immaterial form and not of substance. The thing that renders the giving in the first instance less than a gift is the power in the donor to nullify his grant. The exercise of the power is equally efficacious in either case in bringing about the defeat of what once had "the quality of a gift", regardless of how the power happened to attend. And, with the extinguishment or termination of the power, however created, comes the "change of legal rights and * * * shifting of economic benefits" (Burnet v. Guggenheim, supra)[3], which Congress taxed by Section 501(a) of the Revenue Act of 1932 as a transfer by gift effected at that time.

In addition to Section 501(a), which imposes the tax "upon the transfer * * * of property by gift", Subsection (c) of the same Section provides, in material part, that "The tax shall not apply to a transfer of property in trust where the power to revest in the donor title to such property is vested in the donor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such property or the income therefrom, but *the relinquishment or termination of such power (other than by the donor's death) shall be considered to be a*

---

2 "Section 501 [550]. *Imposition of tax*

"(a) For the calendar year 1932 and each calendar year thereafter a tax, computed as provided in section 502 [551], shall be imposed upon the transfer during such calendar year by any individual, resident, or non-resident, of property by gift.

"(b) The tax shall apply whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible; but, in the case of a non-resident not a citizen of the United States, shall apply to a transfer only if the property is situated within the United States. The tax shall not apply to a transfer made on or before the date of the enactment of this Act [June 6, 1932].

"(c) The tax shall not apply to a trans-

fer of property in trust where the power to revest in the donor title to such property is vested in the donor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such property or the income therefrom, but the relinquishment or termination of such power (other than by the donor's death) shall be considered to be a transfer by the donor by gift of the property subject to such power, and any payment of the income therefrom to a beneficiary other than the donor shall be considered to be a transfer by the donor of such income by gift." Revenue Act of June 6, 1932, c. 209, 47 Stat. 169, 26 U.S.C.A. § 550 and note.

3 See, also, Chase National Bank v. United States, 278 U.S. 327, 338, 49 S. Ct. 126, 73 L.Ed. 405, 63 A.L.R. 388, and Saltonstall v. Saltonstall, 276 U.S. 260, 271, 48 S.Ct. 225, 72 L.Ed. 565.

*transfer by the donor by gift of the property subject to such power*", etc. (Italics supplied.)

■ The meaning of this provision is free from doubt. Yet, the respondent argues that Subsection (c) was intended to embrace only instances where the power vested in the donor to revest in himself title to the trust property is expressly reserved to him by his instrument of transfer. Again, no occasion for the distinction is indicated by the plain and understandable words of the statute. Indeed, it would be difficult to suggest language more expressive of a legislative intent to cover all instances where there was a power in the donor to revest in himself title to the transferred property, regardless of the form or manner by which the power came into being. To conclude that Section 501 (c) does not embrace a power to revoke, imposed by law, would require that we read into the statute something that is not there and place upon it a limitation which could not be justified on any reasonable ground.

■ However, what Subsection (c) of Section 501 plainly expresses, and therefore means, neither adds to nor takes away from the scope of the tax imposed by Subsection (a). The provision in Subsection (c) is but declaratory of the law applicable to a determination of when a gift becomes consummate. This was pointed out clearly in Burnet v. Guggenheim, supra. There the question arose under the Gift Tax Act of 1924. The taxing clause in the 1924 Revenue Act was substantially carried forward as Section 501 (a) of the Act of 1932. The 1924 Gift Tax Act did not, however, contain anything similar to Section 501 (c) of the later Act. But a Treasury Regulation (Regulations 67, Art. 1), in substance the same as the provision in Section 501 (c) of the Revenue Act of 1932, had been adopted and promulgated by the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury prior to the termination of the donor's power to revoke in the Guggenheim case. By the time the latter case came before the Supreme Court, the Revenue Act of 1932 had been enacted, incorporating as Section 501 (c) what had been the regulation under the 1924 Revenue Act. This later statutory provision was called to the attention of the Court in the Guggenheim case in support of the asserted validity of the regulation under the Revenue Act of 1924. With respect to both, namely, the prior regulation under the Revenue Act of 1924 and its statutory counterpart (Section 501 (c) of the Revenue Act of 1932), Justice Cardozo, speaking for the Supreme Court, said, "We think the regulation, and the later statute continuing it, are declaratory of the law which Congress meant to establish in 1924". Congress, having perceived from the opinion in the Guggenheim case that what Subsection (c) of Section 501 of the Revenue Act of 1932 contained was otherwise "a fundamental part of the law",[4] thereupon expressly repealed that Subsection.[5] In the recent case of Rasquin v. Humphreys, 60 S.Ct. 60, 62, 84 L. Ed. ——, Mr. Justice Stone said, "This" (referring to Sec. 501 (c) of the Act of 1932) "was repealed by § 511 of the Act of 1934, 48 Stat. 680, 26 U.S.C.A. § 550, because Burnet v. Guggenheim, 288 U.S. 280, 53 S.Ct. 369, 77 L.Ed. 748, had declared that such was the law without specific legislation".

The effect of the decision in the Guggenheim case, supra, was to leave Section 501 (a) of the Revenue Act of 1932 (the taxing clause) unaffected by Section 501 (c) of the same Act, and Section 501 (a), as we have indicated, is the same, in all material respects, as Sec. 319 of the Revenue Act of 1924 [6] which was before the court in the Guggenheim case. As the construction placed by the Supreme Court (see Burnet v. Guggenheim, supra) on Sec. 319 of the Gift Tax Act of 1924 is sufficiently broad to include the extinguishment of all powers to revoke, regardless of how they arise or are created, Section 501 of the Revenue Act of 1932 correspondingly embraces all powers in donors to revest in themselves title to the transferred property, whether the power, so to do, is expressly reserved to the donor by his deed of trust or is imposed by law.

■ In arguing for a distinction, under the Gift Tax Act of 1932, between a power to revoke expressly reserved and one imposed by law, the respondent cites two cases. Helvering v. Helmholz, 296 U.S.

---

[4] See House Report No. 704, 73rd Congress, 2nd Session, p. 40, and Senate Report No. 558, 73rd Congress, 2nd Session, p. 50.

[5] Revenue Act of 1934, c. 277, § 511, 48 Stat. 680, 26 U.S.C.A. § 550, note.

[6] 43 Stat. 253, c. 234, 26 U.S.C.A. § 1131 note.

93, 56 S.Ct. 68, 80 L.Ed. 76, and White v. Poor, 296 U.S. 98, 56 S.Ct. 66, 80 L.Ed. 80. Neither case is authority for the distinction for which the respondent contends. Each of the cases cited questioned the right of the Commissioner of Internal Revenue to include in a decedent's gross estate, for estate tax purposes, under Section 302(d) of the Revenue Act of 1926[7], property which the decedent had transferred in trust with certain provision for the termination of the trust. In each instance, the Commissioner contended that the settlor, at death, had power in conjunction with other persons to "alter, amend or revoke" the trust and that, by reason thereof, the trust property was properly includable in the decedent's gross estate. In the Helmholz case the settlor was one of the beneficiaries to whom the power was given by the trust indenture to terminate. the trust and return the property to the settlor if all of the beneficiaries agreed in writing that that should be done. No power to revoke the transfer or change the beneficiaries was reserved to the settlor as such. Her only power in connection with a possible termination of the trust and a return of the property to herself came to her as one of the beneficiaries and not as the settlor. Hence, the case was not within the intent of the statute. Likewise, in the Poor case, the trust indenture contained no reservation of power in the settlor either to revoke or modify the transfer, but it did provide that the trust might be terminated by unanimous action of the trustees, of whom the settlor was one at the time of her death through appointment by the other trustees with the approval of all of the beneficiaries, as provided and required by the trust indenture. The termination of the trust could come about only by trustees' action and not through the exercise of a power reserved to the settlor, as such, acting either alone or in conjunction with others. Consequently, this case also was not within the intent of the statute.

The respondent misinterprets the meaning of the Helmholz case where the court said that the Government's "argument overlooks the essential difference between a power to revoke, alter, or amend, and a condition which the law imposes". [296 U.S. 93, 56 S.Ct. 70, 80 L.Ed. 76] What the court was there pointing out was that the power in the beneficiaries, as such, to revoke a trust was a legal right[8] which they also enjoyed without any grant in the premises from the settlor. The power, therefore, could not be one reserved to the settlor, as such, within the contemplation of Sec. 302(d) of the Estate Tax Act of 1926. Otherwise, Congress would be attempting to tax, as a part of a deceased settlor's estate, in States where beneficiaries have the legal right to terminate a trust, property with which the settlor had irrevocably parted in his lifetime, so far as any power, on his part as settlor, to terminate the trust was concerned. This, of course, Congress could not do without violating the Fifth Amendment of the Constitution, U.S.C.A.; and, an intent so to do was not to be imputed to Congress by adopting the construction of Sec. 302(d) of the Estate Tax Act of 1926 for which the Government was contending in the Helmholz case. The thing of importance in the Helmholz case was that the power of revocation there rested with the beneficiaries and not with the settlor as such. The ruling in the Poor case so implies. In the latter case, the trustees did not have a power to revoke conferred by law as did the beneficiaries in the Helmholz case. The trustees' power to revoke in the Poor case came from the trust indenture alone. Yet, the result in the Poor case was the same as in the Helmholz case. Neither the Helmholz case nor the Poor case distinguishes between a settlor's power to revoke when imposed by law and a settlor's like power when reserved by his trust indenture.

It is implicit in the case of Hughes v. Commissioner, 9 Cir., 104 F.2d 144, that a power to revoke a transfer in trust, arising by operation of law, comes within the purview of Section 501(a) and (c) of the Revenue Act of 1932. In that case, other than for the settlor's power to revoke which was imposed by a California statute, the transfer was complete and irrevocable as a gift, no power to revoke having been reserved by the settlor in his trust indenture. Under the law of Massachusetts the trust was irrevocable. The court held that the law of Massachusetts (the situs of the trust) governed in determining when the transfer became consummate as a gift. Nonetheless, the implication of the court's reasoning is plain. If the law of

---

[7] Revenue Act of 1926, c. 27, 44 Stat. 9, 26 U.S.C.A. § 411(d).

[8] Restatement of the Law of Trusts, Secs. 337, 338.

California (the domicile of the settlor) had governed, the effect of the statutorily imposed power of revocation in California would have been to suspend the taxability of the transfer, as a gift, until the power, which the law there imposed, had been extinguished or terminated.

The argument that the assessment of a tax on the respondent's transfer in this case would be to invoke her disability, as a minor, to her disadvantage, contrary to the law's solicitude for minors, misconceives what is no more than a concomitant result attendant upon the minor's legal inability to part with her property completely and absolutely during her minority. The contention of the respondent, if adopted, would mean that all transfers by minors, absolute on their face, while a gift tax act was extant, would be taxable, when made, notwithstanding that the minor might later disaffirm and thus completely nullify the transfer. Such a hardship on a minor could readily prove to be a barrier to a minor's free exercise of his unquestionable right to disaffirm. Suppose the minor in the present instance had made the transfer in trust two days after the Gift Tax Act became effective, instead of two days before, as she did. Would she have, at once, become liable for a tax? We think not. Her dominion and control over the transfer did not cease until she attained her majority and failed to disaffirm. To tax as a gift that which is not a gift, Congress did not intend.

Furthermore, Section 510 of the Gift Tax Act of 1932, 26 U.S.C.A. § 559, makes the donee liable for the tax also. "It can hardly be supposed that Congress intended to impose personal liability upon the donee of a gift of property, so incomplete that he might be deprived of it by the donor the day after he had paid the tax". Sanford's Estate v. Commissioner of Internal Revenue, 60 S.Ct. 51, 57, 84 L.Ed. ——. Or, as the Supreme Court also said in Burnet v. Guggenheim, supra, "Hardship there plainly is in exacting the immediate payment of a tax upon the value of the principal when nothing has been done to give assurance that any part of the principal will ever go to the donee": The hardship of the result which the respondent's contention would entail denies it validity. Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413, 86 A.L.R. 249.

The argument, that to impose a tax on the transfer when the minor attained her majority and failed to disaffirm, would require that the statute be construed as having retroactive effect, contrary to the decisions[9] and the Act[10] itself, erroneously assumes that the gift was complete when the minor executed her deed of trust. It was the change of legal rights and the shifting of economic benefits that came about with the termination of the minor's power to revoke "which Congress was at liberty, under the Constitution, to tax as a transfer effected at that time. * * * The question is not one of legislative power. It is one of legislative intention." Burnet v. Guggenheim, supra.

The respondent suggests that a ruling, that a minor's transfer in trust does not become taxable until the minor attains majority and fails to disaffirm, will lead to difficulties in administration with respect to the date of taxability of a transfer in view of the varying periods allowed minors for disaffirmance after majority. No such difficulty arises from the record in this case. The respondent objected neither to the Commissioner's determination of the date the transfer became complete as a gift nor to the valuation placed upon the securities embraced by the transfer. Moreover, the period of the New Jersey statute of limitations, the utter conceivable limit of the respondent's right to disaffirm, expired on October 9, 1939, without an effort at disaffirmance on her part. In any event, for the Commissioner to promulgate a regulation with respect to a minor's transfer in trust that will fully protect the minor's free exercise of his right to disaffirm after majority should not present insuperable difficulty.

The decision of the Board of Tax Appeals is reversed and the case remanded to the Board with directions to proceed in accordance with this opinion.

[9] Blodgett v. Holden, 275 U.S. 142, 276 U.S. 594, 48 S.Ct. 105, 72 L.Ed. 206; Untermyer v. Anderson, 276 U.S. 440, 48 S.Ct. 353, 72 L.Ed. 645.

[10] Sec. 501(b) of the Revenue Act of 1932, c. 209, 47 Stat. 169, 26 U.S.C.A. § 550(b).