Nina N. DODGE, also known as Nina N. (Dodge) Cullinan, Plaintiff-Appellee

v.

UNITED STATES of America, Defendant-Appellant.

No. 27103.

United States Court of Appeals Fifth Circuit.

July 24, 1969.

**1240**

William A. Meadows, Jr., U. S. Atty., Miami, Fla., Johnnie M. Walters, Asst. Atty. Gen., Tax Div., U. S. Dept. of Justice, Washington, D. C., Lee A. Jackson, Harry Marselli, Jeanine Jacobs, Jonathan S. Cohen, John P. Burke, Attys., Dept. of Justice, Washington, D. C., for appellant.

E. Jackson Boggs, Walter E. Humkey, Albert C. O'Neill, Jr., of Fowler, White, Collins, Gillen, Humkey & Trenam, Tampa, Fla., for appellee.

Before WISDOM and MORGAN, Circuit Judges, and DAVIS,* Judge of the U. S. Court of Claims.

DAVIS, Judge:

In the first part of 1960, plaintiff-appellee (whom we shall call Mrs. Dodge) and her then husband (Dr. Henry W. Dodge, Jr.) owned some six acres near Rochester, Minnesota, valued at more than $165,000; her share was 67½ percent and his the remainder. They wished to give this property to the Sisters of St. Francis Academy of Our Lady of Lourdes (the Sisters), a religious group, in such a way as to take advantage of the federal tax provisions relating to gifts to charitable organizations. At that time the Internal Revenue Code limited such charitable deductions to 30 percent of the taxpayer's adjusted gross income (§§ 170(a) (1) and (b) (1) (A) (i) and (B) of the IRC of 1954), and the value of this Minnesota real estate was considerably more than could be deducted, under that limitation, if the property were given all at once in 1960.

After consultations with their accountant, financial adviser, and others, the Dodges decided to convey a one-fifth undivided interest to the Sisters in 1960, so as to bring themselves clearly within the charitable deduction provisions.[1] However, the donors never dealt directly with the donees and, through a mishap, the deed which the former actually executed and delivered in September 1960 conveyed the entire six acres to the latter. The description in this deed was not provided by the Dodges (but by some one else whose identity is not clearly shown in this record) and it covered more than the one-fifth they then desired to convey. Later, in 1961, taxpayer became aware that a full interest in the property had been transferred instead of the undivided one-fifth. In 1961 another deed conveying a second undivided one-fifth interest was tendered to and accepted by the Sisters. Efforts were also made to have the religious group agree to reform the original 1960 deed, but there was difficulty because the Sisters (to whom the Dodges' real intent had apparently never been communicated) believed they had received the entire property in 1960 and were unwilling to say that they, too, were mistaken in accepting that deed. Finally, in 1964 a "reformation agreement", signed by the donors and the Sisters, stated that the grantors intended in 1960 to transfer only a one-fifth interest,[2] and reformed the 1960 deed to

---

\* Sitting by designation.

1. The value of an undivided one-fifth interest was $33,000.

2. The "reformation agreement" does not say that the Sisters shared in, or were aware of, that mistake.

reflect a conveyance of only a one-fifth undivided interest for that year. Shortly afterwards, Mrs. Dodge's remaining interest was granted to the Sisters. See footnote 7, *infra*.

The present controversy arises because Mrs. Dodge took a charitable deduction, in her 1961 income tax return, for the one-fifth undivided interest represented by the second deed given to the charity in that year. The Internal Revenue Service rejected this 1961 charitable deduction on the ground that the entire property had already been conveyed in 1960. Plaintiff paid the additional assessment and now sues for a refund. The District Court held in her favor, 292 F.Supp. 573, and the Government has appealed.

■ The part of the District Court's findings which we have summarized above is now undisputed by the parties. The record makes it quite clear that the district judge was amply supported in his factual findings that (1) taxpayer and her husband wished to make the gift so as to take advantage of the charitable deduction provisions; (2) the description of the conveyance in the 1960 deed was not by them, and granted more than they then intended; and (3) they wished to give only a one-fifth undivided interest. But there are, in addition, other findings, still vigorously contested by the Government, on which the court below rested its decision. These attributed to the Sisters imputed knowledge of the donors' intent in 1960, through a Minnesota attorney who represented the Sisters in the 1960 transaction, and whom the Dodges mistakenly considered to represent them also. The District Court concluded that this lawyer had sufficient knowledge of the donors' intent and that his knowledge should be imputed to his clients, the charitable organization. On this basis, the trial judge found a mutual mistake in both

sides' intentions as to the 1960 deed, which could and should lead to reformation of that instrument under Minnesota law, a reformation which should be accepted for federal tax purposes.

Plaintiff's husband, Dr. Dodge, whose 1961 claim of a charitable deduction on account of the 1961 deed, had likewise been refused by the Internal Revenue Service on the same ground, pursued his remedy through the Tax Court. That court also held for the taxpayer but on a basis different from that of the judge below. Henry W. Dodge, Jr. v. Commissioner, T.C.Memo 1968–238, 27 T.C.M. 1170 (Oct. 15, 1968), pending on appeal to the Court of Appeals for the Ninth Circuit. Bypassing the "difficult" problems of whether there was in fact a mutual mistake—an error on the part of the Sisters as well as the donors—and, if so, whether the 1964 "reformation agreement" could "relate back" to 1960 and 1961 for tax purposes, the Tax Court held that (a) under Minnesota law the erroneous 1960 deed could have been reformed on the basis of the grantors' unilateral mistake; (b) accordingly, "the original 1960 transfer passed only bare legal title to [the taxpayer's] entire interest in the property and that, immediately after such transfer, [taxpayer] had the unqualified right, as against the Sisters of St. Francis, to defeat that transfer to the extent of four-fifths thereof"; and (c) it follows that "Under these circumstances, four-fifths of [taxpayer's] transfer in 1960 was illusory and therefore did not have the necessary completeness to be recognized for Federal tax purposes". The result was that the taxpayer retained his interest in the other four-fifths for the purposes of later disposition. 27 T.C.M. at 1174–1175.[3]

■ Because of the intricacies in the factual question of whether there was a *mutual* mistake[4]—the existence of a

---

3. The Tax Court decision was rendered some time after the District Court below had entered its finding of fact and conclusions of law.

4. Though the district judge made no finding on the point, the record shows that the Sisters themselves thought they were receiving the full property in 1960, and

unilateral mistake by the Dodges is sufficiently shown in this record and is now undisputed—we confine ourselves to legal issues centering on the existence of a unilateral error, and take the same road as did the Tax Court. The first step is to decide whether Minnesota law enabled taxpayer-plaintiff, on the basis of her unilateral mistake, to avoid the erroneous transfer of more than a one-fifth undivided interest in 1960. The Tax Court's affirmative answer seems to us a correct and reasonable appraisal of the Minnesota law.

█ Like the rest of the country, that jurisdiction grants reformation for a mutual mistake, adequately proved. Fritz v. Fritz, 94 Minn. 264, 102 N.W. 705 (1905); Glaser v. Alexander, 247 Minn. 130, 76 N.W.2d 682 (1956); Gethsemane Lutheran Church v. Zacho, 258 Minn. 438, 104 N.W.2d 645 (1960). The highest court of the State has also said that reformation for a mere unilateral mistake is impermissible (absent fraud or other inequitable conduct). Gethsemane Lutheran Church v. Zacho, *supra*; Olson v. Shepard, 165 Minn. 433, 436, 206 N.W. 711, 712 (1926). But these statements were made in connection with bargained-for conveyances or contracts, in which the other party has given some valuable consideration in exchange. There are no Minnesota cases dealing with a one-sided mistake with respect to a voluntary conveyance (*i. e.*, without consideration). The dominant view elsewhere is that reformation is available, against the grantee, in such a situation. "Many jurisdictions, however, recognize an exception to the general rule and hold that the donor-grantor of a voluntary conveyance, or his heirs or successors in title, may have reformation as against the grantee, on the ground of mistake and in such case mutuality of mistake is not essential, it being immaterial that the grantee was not cognizant thereof". Jonas v. Meyers, 410 Ill. 213, 101 N.E.2d 509, 515 (1951). See, also, Gray v. Gray, 233 Ark. 310, 324 S.W.2d 329 (1961); 3 Corbin, Contracts, § 608, p. 674 (1960); 69 A.L.R. 423, 430 (1930); 128 A.L.R. 1299, 1302 (1940).

██ Under Commissioner of Internal Revenue v. Estate of Bosch, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782–1783, 18 L.Ed.2d 886, 893–894 (1967), we must decide as best we can, in the absence of decisions by the Minnesota Supreme Court what is the law of that State. Like the Tax¯ Court, we have no reason to believe that Minnesota would depart from the prevailing rule allowing reformation, against the grantee, for a unilateral mistake by the grantor of a voluntary conveyance. Since her mistake is clear upon the record,[5] we find, therefore, that Mrs. Dodge could have

---

were not personally acting under any mistake. The crucial factual issue, with respect to mutual mistake, is whether the Sisters' Minnesota lawyer was aware of the donors' intent in 1960. On that the record is quite spare. The district judge determined in his conclusions of law, 292 F.Supp. at 576, that the attorney had sufficient knowledge of the donors' intent and that his knowledge should be imputed to the Sisters (whom he represented), but the actual finding of fact is simply that the lawyer (O'Brien) "was at least aware that one of the reasons the property was being given to the Sisters was because of the income tax consequences thereof, that plaintiff and her then husband, Dr. Henry W. Dodge, Jr., were being guided with respect to these tax consequences by their certified public accountant, Kenneth E. Studdard, of Houston, Texas, and that

there was a plan by which the gift was to be made." 292 F.Supp. at 575. It is not absolutely plain that the District Court's legal conclusion as to the lawyer's knowledge of the donors' intent is supported by this factual finding, and there is also a question whether the evidence would sustain a specific finding that the lawyer in fact knew, at that time, that the donors wished to convey less than the full property in 1960, or that they wanted to grant only a one-fifth interest.

5. If that be necessary, the proof of mistake would meet the evidentiary standard ("clear, convincing, and unequivocal") the Minnesota Supreme Court has laid down as a condition for reformation for mutual mistake. Golden Valley Shopping Center, Inc. v. Super Valu Realty Inc., 256 Minn. 324, 98 N.W.2d 55 (1959).

obtained judicial reformation of the 1960 deed, and that, even without any formal adjudication, she always had the right under state law to prevent the Sisters from acting or being treated as the full beneficial owners of more than one-fifth of the property. At most, the charity had bare or technical legal title to the four-fifths which Mrs. Dodge did not intend to convey in 1960.

In these circumstances, we agree with Judge Tannenwald, for the Tax Court, that the federal income tax does not view the mistaken grant of the four-fifths in 1960 as a completed gift as of that time. That was simply a technical donation on paper, defective from its inception, immediately subject to recall by the donor, and very likely in fact to be recalled or rendered nugatory. The Government's regulation on charitable deductions (Income Tax Regs., § 1.170–1(e)) insists that it must be very highly likely that the charity will receive the beneficial enjoyment of the transfer before such a deduction will be recognized as a deduction.[6] Similarly, for the purposes of the gift tax "a gift is not consummate until put beyond recall". Burnet v. Guggenheim, 288 U.S. 280, 286, 53 S.Ct. 369, 371, 77 L.Ed. 748, 751 (1933). In *Guggenheim*, a gift was ruled incomplete when made because the grantor then reserved a power of revocation but was held to be consummated in a later year when that power was cancelled. Commissioner of Internal Reve-nue v. Allen, 108 F.2d 961 (3 Cir. 1939), cert. denied, 309 U.S. 680, 60 S.Ct. 718, 84 L.Ed. 1023 (1940), applied the same principle to a gift by a minor which was revocable under state law after attaining twenty-one. See, also, § 25.2511–2(c) of the Gift Tax Regulations ("A gift is incomplete in every instance in which a donor reserves the power to revest the beneficial title to the property in himself.") In this instance, too, the grantor (Mrs. Dodge) had in law a reserved power to revest the beneficial interest in herself—to paraphrase the Gift Tax Regulations. Conversely, in the phrasing of the Income Tax Regulations (*supra*, note 6), the Sisters' interest would be defeated by the highly probable happening that if they did not agree to reform the deed Mrs. Dodge would bring a reformation action in Minnesota and would prevail there.[7] The 1960 deed, in short, was defective and imperfect at the moment it was issued.

In this light it is unnecessary to consider the 1964 "reformation agreement" as an operative instrument—its only function is the evidentiary one of supporting the factual finding that Dr. and Mrs. Dodge were mistaken in 1960—or to consider whether, if it were an operative document, it could "relate back" for the purposes of the 1961 income tax. Our decision rests (as did the Tax Court's), first, on the undisputed factual finding that taxpayer was mistaken in 1960; secondly, on the legal determina-

---

**6.** Section 1.170–1(e) provides in part:
"*(e) Transfers subject to a condition or a power.* If as of the date of a gift a transfer for charitable purposes is dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, no deduction is allowable unless the possibility that the charitable transfer will not become effective is so remote as to be negligible. If an interest passes to or is vested in charity on the date of the gift and the interest would be defeated by the performance of some act or the happening of some event, the occurrence of which appeared to have been highly improbable on the date of gift, the deduction is allowable.

The deduction is not allowed in the case of a transfer in trust conveying a present interest in income if by reason of all the conditions and circumstances surrounding the transfer it appears that the charity may not receive the beneficial enjoyment of the interest."

**7.** Several months before the 1964 "reformation agreement", Mrs. Dodge wrote to the Sisters that unless they agreed voluntarily to reform the 1960 deed she would institute suit to have that instrument reformed. She also said, without committing herself, that if the charity agreed to reformation she would thereafter transfer to it her remaining interest in the property.

tion that under Minnesota law she could therefore have obtained reformation, the Sisters meanwhile having only a defeasible legal title; and, finally, on the legal conclusion that in these circumstances the federal income tax law would not recognize the mistaken grant in 1960 of the four-fifths interest as a deductible charitable gift. On that view it was legally possible for Mrs. Dodge to make the later gift of a one-fifth interest in 1961, and to obtain a charitable deduction in that year.

The judgment is affirmed.