EDWARD A. HODGKINS *vs.* CHARLES H. PRICE & another.

Essex. Nov. 9, 1883. — March 4, 1884. W. ALLEN & HOLMES, JJ., absent.

An action of ejectment still exists in this Commonwealth for the recovery of a term.

Objections not taken at the trial of an action are not open on a report of the case.

A declaration, in an action of ejectment by A. against B., alleged a lease by P. to F. of a certain parcel of land, for a term of years, entry into possession by F., an assignment of the lease to A., and an ejection thereafter by B. *Held,* that this was a sufficient declaration of ejectment of a term to authorize a judgment for possession and for damages, and was not a declaration merely in trespass.

A lessor served a notice to quit for non-payment of rent, by leaving the notice at the lessee's house, off the demised premises, and called the attention of a person, not an agent of the lessee nor a member of his family, to it. This person gave the notice to the lessee the next day. *Held,* that the leaving of the notice was not a good service on the lessee, and that the fourteen days, prescribed by the Gen. Sts. *c.* 90, § 30, did not begin to run until the lessee received the notice.

If a lessee for a term of years, within fourteen days after a notice to quit is given him by the lessor for non-payment of rent, under the Gen. Sts. *c.* 90, § 30, tenders to the lessor the rent due, he prevents a forfeiture of his estate; and he is not obliged to tender the taxes due on the estate which the lessor has paid to prevent the estate being sold for taxes, although the lease contains a covenant that the lessee shall pay the taxes.

A lease for twenty years contained the provisions, that, if the premises or any part thereof should, during the term, be destroyed by fire, the rent, or a proportionate part thereof, should abate until the lessor or lessee should put the premises in repair; that, if the lessee should rebuild, the lessor should contribute the amount of insurance money received; and that, if the lessor should want the premises for the purpose of building any time after the expiration of fifteen years from the commencement of the lease, the lessee should give up the premises, after reasonable notice. A fire took place, the lessor illegally ousted the lessee and erected new buildings, and eight years afterwards, at the expiration of fifteen years, not intending then to rebuild, and while still in possession, notified the lessee that he wanted the premises for the purpose of building. *Held*, in an action of ejectment begun by the lessee two years before the notice was given, that the notice was of no effect.

EJECTMENT. Writ dated February 9, 1880. The declaration was as follows:

" And the plaintiff says that one Eben N. Price, by his lease in writing under seal, duly made, executed, and recorded in the registry of deeds for the southern district of said county of Essex, did heretofore, to wit, on the ninth day of April, in the year eighteen hundred and sixty-seven, demise unto one Julian A. Fogg the following-described premises, to wit, a certain parcel of real estate, situated in Salem, in the county of Essex aforesaid, and bounded and described as follows, to wit, the land and buildings thereon known as the ' Price Estate,' situated on Essex and Washington Streets, in Salem aforesaid : comprising the whole estate bounded on the south by the Holyoke Building; on the east by Washington Street; on the north by Essex Street; and on the west by the Creamer estate, so called, — to have and to hold the same to the said Julian A. Fogg, his executors and administrators, from the ninth day of April, in the year eighteen hundred and sixty-seven, for and during the term of twenty years thence next ensuing, and fully to be complete and ended. And said Fogg entered upon said premises and was possessed thereof. And thereafter, to wit, on the twenty-ninth day of July, in the year eighteen hundred and seventy-five, the said Fogg being still possessed of said premises, did sell and assign his said lease, and the term aforesaid, for divers good and valuable considerations, unto the plaintiff, by an assignment thereof in writing, under seal, duly made, executed, and recorded in the aforesaid registry of deeds.

" And the plaintiff says that by force of said lease, and said assignment thereof to him, as aforesaid, the said demised premises,

for the then unexpired portion of the term aforesaid, to wit, from said twenty-ninth day of July, eighteen hundred and seventy-five, ensuing, vested in him, and he was possessed thereof; and that the defendants thereafter, to wit, entered into the tenement and premises aforesaid, which the said Eben N. Price had demised as aforesaid, for the term aforesaid, assigned to plaintiff as aforesaid, which is not yet expired, and ejected the plaintiff therefrom, and unjustly withholds from the plaintiff the possession thereof: to the damage of the plaintiff of thirty thousand dollars; and therefore he brings his suit."

At the trial in this court, before *Field,* J., the jury returned a general verdict for the plaintiff, it being agreed that the question of damages should be referred to an assessor; and the judge reported the case for the consideration of the full court. The facts appear in the opinion.

*S. Bartlett & G. B. Ives,* for the defendants.

*C. P. Thompson,* (*J. W. Pickering* with him,) for the plaintiff.

MORTON, C. J. This is an action of ejectment of a term. In the revision of the statutes, in 1836, great changes were made in real and mixed actions. Writs of right and of formedon were abolished, and writs of entry were greatly modified, but no change was made in the common law writ of ejectment. Rev. Sts. *c.* 101, § 51. It is rarely used, but it has never been abolished in this State. *Fay* v. *Taft,* 12 Cush. 448. *Merrill* v. *Bullock,* 105 Mass. 486.

Before proceeding to the substantial merits of the case, we consider some objections in formal matters, urged by the defendants in the argument in this court. They object that the action cannot be maintained in its present form, it being the common law action of " ejectione firmæ," whereas it should have been the action known as " quare ejecit infra terminum," in which the conveyance of the land by the lessor to the ejector must be alleged in the declaration; they also object that the ouster proved was by the lessor, and not by the defendants, his assignees. Neither of these objections was taken at the trial, and they are not before us upon this report. If they had been so taken, they might have been cured by amendments or further proofs, and any amendment in form can now be made, if necessary. The same is true of the objection that the assignment

to the plaintiff is invalid, and that the suit should have been brought in the name of Fogg, the original lessee.

We consider now the exceptions taken at the trial. The court properly refused to rule, as requested by the defendants, that the declaration was a mere declaration in trespass, and would not authorize a judgment for possession. The declaration is sufficient as a declaration of ejectment of a term, which, as Blackstone says, is a mixed action, "somewhat between real and personal; for therein are two things recovered, as well restitution of the term of years, as damages for the ouster or wrong." 3 Bl. Com. 199. The ruling was right, that in such action the plaintiff is entitled to recover possession and his damages.

One of the principal questions at the trial was as to the effect of a notice to quit for non-payment of rent according to the terms of the lease, given by the lessor to the lessee, and of a subsequent tender of the rent by the lessee. The plaintiff put in evidence a lease, dated April 9, 1867, from Eben N. Price to Julian A. Fogg, for the term of twenty years. It appeared that Fogg was indebted to the lessor to a large amount for rent in arrears, and, on July 14, 1875, the lessor caused a notice to quit to be served upon him by an officer. He made no personal service, but put the notice through an open window of the house of Fogg, not then occupied by his family, but which he slept in at night. The officer at the same time called the attention of one Partington to the matter, who was an uncle of Fogg, but was not shown to have been his agent or servant, or a member of his family. On the morning of July 15, the said Partington handed the notice to Fogg. We are of opinion that the service on July 14 was not a sufficient service on or notice to Fogg. The statute requires, in order to determine a lease for years for non-payment of rent, that "fourteen days' notice to quit, given in writing by the landlord to the tenant," shall be necessary. Gen. Sts. c. 90, § 30. It does not prescribe how such notice shall be given. It has been held that leaving a notice on the demised premises with an agent or partner of the lessee, or at the lessee's house with his wife, explaining the contents of it to her, is sufficient; but merely leaving a notice at the lessee's house, off the demised premises, without explaining it to any

one, is not good.  *Walker* v. *Sharpe*, 103 Mass. 154, and cases cited.  But the actual receipt by Fogg of the written notice on July 15 was a good notice to him under the statute, and the fourteen days would begin to run from the day of the receipt by him.

It appeared at the trial, that on July 29, 1875, Fogg made a tender to his lessor of a sum of money, which, as the jury must have found, was sufficient to pay all the rent in arrear and interest thereon; but which, as we must assume, for the purposes of this discussion, was not sufficient to pay the taxes on the leased premises which were due and unpaid, and which the lessor had been obliged to pay to protect his estate.  The court ruled that such tender, being within fourteen days of the notice to the tenant, would purge the notice and prevent a forfeiture of his term, and that he was not obliged to tender the amount paid by the lessor for taxes in order to produce this effect.

The defendants contend that the notice operated as an absolute determination of the tenancy at the expiration of fourteen days, and that a tender could not prevent this effect.  This question depends upon the construction and effect of our statutes.  At common law, the refusal or neglect to pay rent does not work a forfeiture of the term, unless the lease contains express conditions of forfeiture in case of the non-payment of rent.  The St. of 1847, *c.* 267, § 1, provided that, "in cases of neglect or refusal to pay rent according to the terms of a written lease, fourteen days' notice to quit, given in writing by the landlord to the tenant, shall be sufficient to determine the lease; provided, however, that if the tenant shall pay or tender to the landlord the rent due, with interest thereon, at any time before final judgment under the proceedings provided for in the second section of this act, the lease shall be and continue in full force."  The second section gave to the landlord the remedy known as the landlord and tenant process, for the summary recovery of the possession of the leased premises when the lease was thus determined.  Rev. Sts. *c.* 104.

The proviso was repealed by the St. of 1856, *c.* 85; but in 1857 it was provided that the payment or tender of rent must be made four days at least before the return day of the writ to recover possession.  St. 1857, *c.* 55.  In the revision of 1860 the

unrepealed part of § 1 of the St. of 1847 appears in the Gen. Sts. *c.* 90, § 30, and the St. of 1857 appears in the Gen. Sts. *c.* 137, § 3. In the revision of 1880 these two provisions are brought together. Pub. Sts. *c.* 121, § 11. The object of these statutes is to give to a landlord the benefit of the summary process for the recovery of possession of his estate if his tenant under a written lease neglects to pay the rent. They do not provide that the tenant's estate shall be absolutely forfeited, either by a failure to pay rent, or by the lapse of fourteen days after a written notice to quit is given him. It is certain that the forfeiture does not become absolute until the fourteen days have run out. Until then the tenant has the right to pay or tender the rent, and reinstate himself in his rights. The process cannot be brought until fourteen days' notice to quit has been given. Until then, the forfeiture is at most conditional, and may be purged and saved by the payment or tender of the rent due. It cannot be necessary that the tenant should wait till such process is commenced before making his tender. The words of the statute, unless the tenant "four days at least before the return day of the writ" pays or tenders his rent, imply that the tender may be made at any time after notice to quit. According to the spirit and the letter of the statute, we think that a tender by a tenant made within fourteen days after a notice to quit is given him will save a forfeiture of his estate, and that the ruling of the court upon this point was right. The facts of this case do not call upon us to inquire what might be the effect of a tender made after the fourteen days had passed.

The defendants rely upon the case of *Kimball* v. *Rowland*, 6 Gray, 224. That was a case in regard to a tenancy at will, and has no application to the case at bar. There is a marked distinction between the determination of tenancies at will, and tenancies for years under a written lease. At the common law a tenancy at will was determinable at the will of the landlord. The purpose of the statute in regard to tenancies at will was, not to provide any new method of determining such tenancies, but merely to fix a period of time which should be deemed a reasonable notice to the tenant of the determination of the lease. Accordingly, we find that they make no provision for the payment or tender of the rent due after a notice to quit is given.

To provide that such payment or tender should defeat the notice, would be inconsistent with the nature of a tenancy at will. The fourteen days' notice to quit, which is an expression of the will of the landlord, works an absolute determination of a tenancy at will. No payment or tender can change this, unless the landlord changes his will and waives his notice. In the case of a tenancy under a written lease, the statute operates to determine the tenancy by way of a forfeiture, and, as we have seen, makes provision that the forfeiture may be purged and saved by a payment or tender of the rent due.

We are also of opinion that the court rightly ruled, that, in order to save the forfeiture, it was not necessary for the tenant to tender the unpaid taxes, although the lessor had paid them to prevent the sale of the estate for taxes. By the provisions of the statute, a forfeiture is saved, if the tenant pays or tenders the rent due, with interest thereon, and all costs of suit. By the lease in this case the lessee stipulates that he " is to keep the buildings in repair, and to pay the state, county, city, and water tax on the property." The parties did not contemplate that the taxes were to be a part of the rent. The covenant to pay taxes is a separate, independent covenant, and is put upon the same footing as the covenant to repair. The provision of the lease, that, in case the building should be destroyed or damaged by fire, the rent, or a just and proportionate part thereof, should be suspended or abated, would not apply to the taxes; but the tenant would be obliged to pay them without any abatement. *Wood* v. *Bogle*, 115 Mass. 30. *Minot* v. *Joy*, 118 Mass. 308. *Sargent* v. *Pray*, 117 Mass. 267. The parties by their contract made a distinction between rent and taxes. The statutes provide that, as a condition of saving his estate, the tenant shall pay or tender the rent; we cannot enlarge it, so as to make it include a tender of the taxes also. It would seem to be just that, in such a case, the tenant should pay or tender the taxes, as to which he was in default; but this is a subject for legislative, and not for judicial, provision.

One other question raised by the report remains to be considered. The lease contains the provision that, " if the lessor should want the aforesaid premises for the purpose of building any time after the expiration of fifteen years from the commencement of

this lease, then, after reasonable notice from the lessor, the lessee is to give up the same peaceably and quietly."

On February 6, 1882, two years after this suit was begun, the defendants gave a notice in writing to the plaintiff, to the effect that the fifteen years would expire on the 8th of April next, and that they should want the said premises for the purpose of building after the expiration of said fifteen years, and requiring the plaintiff to give them peaceable possession on the 9th of April. It was conceded that the defendants did not desire to build anew at the time this notice was given. In fact, they had ousted the tenant, and had built a building satisfactory to themselves, six years before. The defendants contend that the effect of this notice was to terminate the lease at the end of fifteen years. The intention of the parties is not very clearly expressed in this provision. It certainly does not give the lessor the absolute right of terminating the lease at the end of fifteen years. The former parts of the lease provide for the case of a fire, and for repairing or rebuilding the premises, either by the lessor or the lessee.*

It seems to us that the parties contemplated that the lessee should enjoy the premises, whether the old buildings remained, or new ones were built in case of fire, at least to the end of fifteen years, and that the lessor should have the election to terminate the tenancy, at any time after that, only upon one condition, namely, that he then wanted to rebuild. It was not designed to affect the rights of the parties under the lease, in case of a fire and a rebuilding by either party during the fifteen years, but to provide that if at the end of fifteen years, or any time

---

* These provisions, which immediately preceded the one above quoted, were as follows:

"Provided that in case the premises, or any part thereof excepting fixtures, shall during said term be destroyed by fire or damaged by any unavoidable casualty so that the same shall thereby be rendered unfit for use, then in such case the rent hereinbefore named, or a just and proportionate part thereof according to the value and extent of the injury sustained, shall be abated or suspended until the said premises shall have been put in repair by the said lessor or lessee.

"Provided, also, that if the said lessee should choose to rebuild, the said lessor agrees to contribute to the building fund the amount of insurance money received for loss sustained in destruction of original buildings."

thereafter, the lessor wished to substitute other buildings for those then in existence, he should have the option to do so. It seems to us that the contingency contemplated by the parties has not occurred. After the fire, and six years before the fifteen years expired, the defendants unlawfully ousted the tenant and rebuilt the premises. They did not claim to act under the clause we are considering. Their notice to the tenant was an afterthought, designed to shield them from the consequences of the unlawful ouster. It cannot fairly be said, that, when they served their notice, they wanted the premises for the purpose of building, within the meaning of the lease. We are therefore of opinion that the ruling at the trial to this effect was correct.

The result of the whole case is, that the plaintiff is entitled to judgment, and that, according to the stipulation of the parties, the question of damages is to be settled by an assessor.

*Judgment for the plaintiff.*