**In re INTERSTATE RESTAURANT SYSTEMS, INC., et al., Debtor.**

**Jack CORMAN, Plaintiff,**

v.

**HOSPITALITY RESTAURANTS, INC., Defendant.**

Bankruptcy No. 82–01847–BKC–TCB.
Adv. No. 82–0976–BKC–TCB–A.

United States Bankruptcy Court,
S.D. Florida.

Dec. 6, 1982.

Stanley Beiley, Miami, Fla., for Interstate Restaurant Systems, Inc.

Timothy Norris, Miami, Fla., for plaintiff.

MEMORANDUM DECISION

THOMAS C. BRITTON, Bankruptcy Judge.

The plaintiff landlord seeks stay relief under 11 U.S.C. § 362(d) in order to initiate eviction proceedings in Dallas to recover possession of a restaurant in plaintiff's shopping center.

The chapter 11 debtor resists, offering immediate cure of all defaults including a prorata rent overage and reasonable counsel fees, all of which it tendered during an earlier hearing in this proceeding. The debtor has a prospective purchaser-assignee ready to take possession as soon as this litigation permits.

The landlord, sensing a windfall, has rejected the tender and argues (1) the debtor never had a leasehold or any other interest in the property, and (2) if it did, that interest had been completely terminated before September 22, the date of bankruptcy.

The matter was tried on December 2.

With reference to plaintiff's first contention, the debtor has pleaded (C. P. No. 9) that plaintiff is estopped to dispute the debtor's right to possession of the premises by executing on February 11, 1979, a written Consent, which is in effect a lease, and by continuous acceptance of rent in accordance with and since that Consent.

The Consent provides:

"In consideration of the sum of Ten Dollars ($10.00) and other good and valuable considerations, receipt of which is hereby acknowledged, the undersigned Sublessor, Howard Brown and Jack Corman, do hereby consent to the assignment of that certain sublease by the Tenant/Assignor Riviana Restaurant Corporation, a Delaware corporation to Hospitality Restaurants, Inc., a Florida corporation as Tenant/Assignee. The sublease which is the subject of this consent and of the assignment is between the above named Sublessor and Texiana Testaurants, (sic) Inc., dated October 6, 1977, and involves a restaurant located at Beltline and Yale, Richardson Square, East Richardson, Texas. The Sublessor also consents to the use, operation and management of the subject restaurant by the Tenant/Assignee until such time as the legal assignment may be made by the Tenant/Assignor,

This Consent is given on the express condition that Riviana Restaurant Corporation, a Delaware corporation, shall continue to be bound with respect to its Guarantee of the Sublesses obligation under the Sublease; and that the Assignee, Hospitality Restaurants, Inc., assumes all of the obligations of the sublessee under the Sublease Agreement.

The undersigned Sublessor represents that the aforesaid Sublease is in good standing and that Sublessee is not in default under said Sublease."

The execution and delivery of the document by plaintiff, an attorney, is undisputed. The rent stipulated in the existing sublease has been paid and accepted each month until September, 1982, the month of bankruptcy. It has been tendered but refused each month since then.

■ Plaintiff argues that the Consent is ineffectual under the Texas statute of frauds because it does not contain a precise description of the demised premises. I disagree. It is undisputed that the property in question is improved with a restaurant at the corner of the two streets, in the shopping center and in the town identified in the Consent. There has never been the slightest uncertainty in either party's mind concerning the location or extent of the property in question. If necessary for any purpose, the document may be reformed to provide a more traditional legal description of the premises. *Dodge v. United States*, 5 Cir.1969, 413 F.2d 1239, 1242.

■ Plaintiff argues that the debtor never took possession, but that the premises were occupied by a third party. It is undisputed that the premises were occupied and operated by Lums Corporation, a wholly owned corporate shell created by the debtor in Texas as a convenience to satisfy legal requirements in that State. Lums is the trade name of all the debtor's restaurants. The funds and personnel involved in this operation and all management control were provided by the debtor. Plaintiff made no effort to dispossess Lums as an interloper. Here again, equity will disregard the form and concern itself with the substance, where there is no evidence that the plaintiff was misled or deceived in any way. *Matters of Kassuba*, 7 Cir.1977, 562 F.2d 511, 513.

 

 I find that the plaintiff is estopped to dispute either the debtor's right to accept assignment of the sublease in question or the debtor's right to quiet and peaceable possession in the "use, operation and management" of the premises by the debtor until the assignment is made. Since this Consent gives all that any lease ever gives, I conclude that the debtor was a tenant in possession of the demised premises on the date of bankruptcy. *State National Bank of El Paso v. United States,* 5 Cir.1975, 509 F.2d 832, 835.

With respect to plaintiff's contention that the lease was terminated before bankruptcy, the parties agree that Texas, like Florida, recognizes and enforces contractual stipulations for the termination of leases and that the controlling provision here is found on page 26 of plaintiff's exhibit 1: Landlord's Remedies in Event of Default.

Plaintiff complied with that provision by serving written notice, mailed September 13, 1982 and received September 21 by the debtor, specifying that because the rent due September 1 had not been paid:

> "the undersigned does hereby elect to terminate said lease effective September 23, 1982."

However, the debtor filed for bankruptcy the day before the specified termination date. It is provided at 11 U.S.C. § 108(b) that:

> "Except as provided in subsection (a) of this section, if applicable law, an order entered in a proceeding, or an agreement fixes a period within which the debtor ... may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—
> (1) the end of such period, including suspensions of such period occurring on or after the commencement of the case; and
> (2) 60 days after the order for relief."

The debtor is a "trustee" for the purpose of this section and therefore enjoys this statutory privilege. § 1107(a). Within the 60 days grace period, the debtor announced in this adversary proceeding its election to assume the lease under § 365 and tendered all payment and performance necessary to cure the default. The tender was refused by the plaintiff in open court. Plaintiff cannot now contend that the right to cure the default has lapsed.