**In re PLAYERS' PUB, INC., Debtor.**

**Bankruptcy No. 84–00838–L.**

United States Bankruptcy Court,
D. Massachusetts.

Jan. 4, 1985.

Elliot Silverstein, Karger, Krulewich & Arnowitz, Boston, Mass., for Morts Realty Trust.

Sandra Steele, Gilman, McLaughlin & Hanrahan, Boston, Mass., for debtor.

Gerrard F. Kelley, United States Trustee's Office, Boston, Mass.

Martin Wood, Boston, Mass., Chairman of Creditors' Committee.

Stephen M. Kaplan, Widett & Glazier, Boston, Mass., for Creditors' Committee.

## MEMORANDUM AND ORDER ON DEBTOR'S MOTION FOR RECONSIDERATION

THOMAS W. LAWLESS, Chief Judge.

The debtor moved for reconsideration of the Court's amended order of November 15, 1984, allowing the motion of Morton L. Bardfield, landlord, seeking relief from the automatic stay to retake and relet the leased premises, and denying the debtor's motion to assume and assign the subject lease. The landlord, the debtor, and the creditors' committee agree that the crux of the above-stated motions, and indeed the viability of the Chapter 11 case, depend upon the existence of the lease. The Court agreed to set the motion for reconsideration for hearing after it became apparent that some of the parties were confused about the procedural posture of the motions.

### FACTS

Most of the relevant facts are set forth in the Court's memorandum of November 15, 1984. For the ease of the parties, the facts will be repeated herein and are supplemented, where necessary.

Morton L. Bardfield, trustee of Mort's Realty Trust ("landlord"), is the owner of the premises known as 6–9 Harvard Street, Brookline, Massachusetts (the "premises"). By lease dated November 8, 1976 ("the lease") the landlord leased the premises to Cincinnati, Inc. The lease provided that Cincinnati, Inc. would "conduct a cafe licensed to sell alcoholic beverages". The

original rent was $650.00 per month, for a five year term, commencing on November 8, 1976. The lessee was also responsible for payment of water charges and for payment of a percentage of any increase in taxes due the Town of Brookline. The lease contained a first option to extend the original term for an additional five year term and a second option to further extend the lease for another five year term. The reserved rent would increase $100.00 per month during the first five year option period and $200.00 per month during the second option period.

By agreement dated July 1, 1982, Cincinnati, Inc. assigned all its right, title and interest in the lease to Players' Pub, Inc. ("Players' Pub" or "debtor") for a $5,000 payment. This was done with the written consent of the landlord. Prior to the filing of the Chapter 11 petition on June 21, 1984, Players' Pub was notified that it was in default of certain of the lease provisions for failure to pay rent, water charges and real estate taxes and for allegedly altering the premises without the consent of the landlord. After written demand was made upon Players' Pub for payment of the above charges by the landlord, on April 19, 1984 the landlord served a fourteen-days' notice to quit upon Players' Pub pursuant to M.G.L. ch. 186, § 11. Players' Pub, however, did not deliver possession of the premises during the fourteen-day period. On June 11, 1984, the landlord served a summary process complaint upon the debtor. Pursuant to the Massachusetts Uniform Summary Process Rules, the debtor's answer to the summary process complaint was due on or before June 25, 1984.[1] Four days prior thereto, the Chapter 11 petition was filed.

The landlord's uncontroverted allegation is that the fair rental value of the premises is now $4,000.00 per month. The debtor has received an offer from Stagecoach Management Corporation to purchase its assets, including the lease, for $200,000.00.[2] Accordingly, the debtor has filed a motion seeking Court authority to assume and assign the lease to Stagecoach Management Corporation. This motion was filed on September 26, 1984. The debtor has also filed a notice of intended sale.[3] The landlord has objected to the intended sale and the motion to assume and assign the lease on the grounds that the lease terminated on April 19, 1984, prior to the filing of the Chapter 11 petition, and that therefore there is no lease for the debtor to assume and assign. The landlord also filed a motion seeking relief from stay, payment of pre-petition charges, payment of use and occupancy charges, and adequate protection. Pre-petition rent, real estate taxes and water charges remain outstanding. Additionally, the landlord has alleged that the debtor is in violation of the Alcoholic Beverages Regulations of the Town of Brookline which require, *inter alia*, notice of the filing of bankruptcy proceedings and approval by the Board of Selectmen of the substitution of corporate managers prior to the substitution of same, neither of which

---

**1.** The debtor has not alleged that the landlord did not properly comply with the Massachusetts Uniform Summary Process Rules.

**2.** On November 28, 1984, the debtor and the creditors' committee filed a stipulation which provided that from the anticipated $200,000.00 sale proceeds, $153,000.00 (or the balance remaining after curing any defaults under the lease) would be paid to the Patriot Bank, a secured creditor, $23,000.00 would be paid to Cincinnati, Inc., and the remaining $24,000.00 would be available for satisfaction of amounts due the real estate broker, counsel for the creditors' committee and unsecured creditors. Attached to the stipulation were letters from the Patriot Bank and Cincinnati, Inc., evidencing their approval of same and revealing that Cincinnati, Inc. agreed to release its interest in the liquor license in exchange for the $23,000.00 payment. Pursuant to the debtor's schedules and statement of affairs, unpaid and owing state and federal tax liabilities total over $27,000.00 while unsecured claims approximate $70,000.00.

**3.** Actually two notices of intended sale and assumption and assignment of the lease were filed. The first notice combined both requests in one document and was filed on September 20, 1984. The second set was filed separately on September 26, 1984. The terms of the notices varied to a slight degree. However, I need not conclude which filing controls.

requirements were met.[4] At least $750.00 has been paid to the landlord post-petition.

## ARGUMENTS OF THE PARTIES

As set forth above, the underlying basis of all of the above-mentioned motions is whether the lease has terminated; or put another way, the extent, if any, of the debtor's interest in the lease. The parties have filed three sets of briefs which address this question. Their arguments follow.

The landlord argues that pursuant to state law, M.G.L. ch. 186, § 11, the serving of the fourteen-days' notice to quit was sufficient to determine the lease and that because the debtor failed to tender the rent due before or at the time the answer was due in the summary proceeding brought by the landlord to recover possession of the premises, the lease has never been revived. The landlord next argues that because the lease terminated pre-petition, the automatic stay of § 362(a) is inapplicable, even though the debtor is in possession of the premises. The landlord recognizes that the debtor could have revived the lease by paying or tendering the rent due on or before June 25, 1984, the answer date, and that the debtor filed its Chapter 11 petition four days prior thereto. However, by analogy to those cases wherein a petition for relief is filed during the statutory right of redemption period following a mortgage foreclosure, the landlord concludes that the automatic stay of § 362(a) does not apply but rather the more limited grace period of § 108(b) applies. Finally, the landlord concludes that the facts herein are not such that the Court should apply the equitable powers conferred on it by § 105 to hold that the debtor may assume and assign the lease.

The debtor argues that the termination process was not completed prior to the filing of the petition and that pursuant to § 362(a), not only has the summary process action itself been stayed but so has the time to tender the outstanding rent; the lease cannot be terminated before the tenant has an opportunity to present a defense. The debtor also contends that the amounts claimed by the landlord are subject to "an affirmative defense".[5] The debtor points out in support of its position that pursuant to § 365(d), under Chapter 11, unlike Chapter 7, there is no time limit within which a debtor must elect whether to assume or reject a lease. Section 108(b), contends the debtor, does not apply herein because that section requires a fixed time period within which to cure a default and here there has been neither a default nor a fixed period of time. Rather, "an answer may be due at various times depending on the state of the pleadings", e.g., if a motion to dismiss had been filed, the time to answer would have been postponed.

The creditors' committee filed its own memorandum in support of the debtor's motion to assume and assign the lease and in opposition to the landlord's motion seeking relief from stay. The creditors' committee contends that the lease cannot be held to have terminated because § 362(a) applies to prevent termination where at the time of the filing of the petition, a right to cure or reverse exists. Here, the landlord chose to terminate the lease by resort to M.G.L. ch. 186, § 11 (rather than the terms of the lease) which gave the debtor the right to cure, in a summary process action, which was in progress at the time the petition was filed. Accordingly, the lease remained executory and may be assumed, pursuant to § 365(b), by, inter alia, curing existing defaults, at any time prior to the

---

**4.** While not currently before the Court, it is certainly noteworthy that the United States Trustee's Office has filed a motion to convert the Chapter 11 case to a case under Chapter 7 for failure of the debtor to comply with the reporting requirements of the United States Trustee's Office and, in light of the debtor's financial status, suggests that the debtor will be unable to effectuate a Chapter 11 plan of reorga-

nization. This motion has been continued generally, after several hearings.

**5.** At the hearing on the motion for reconsideration, the debtor dropped its previously stated "substantial counterclaim" argument in favor of one asserting an "affirmative defense".

confirmation of a Chapter 11 plan; § 365(d) rather than § 108(b) applies to curing defaults. As a result, the creditors' committee states that the landlord's remedy was to file a motion requesting the Court to fix a date by which the debtor must elect to assume or reject the lease pursuant to § 365(d)(2).

In response to the memoranda of the debtor and the creditors' committee, the landlord emphasizes that § 365 only applies to unexpired leases and cannot be resorted to where, as here, a lease has terminated. Further, the landlord states that his motion for relief from stay was the proper motion, rather than a motion requesting the Court to set a time within which the debtor must assume or reject the lease, because the landlord believed the lease had terminated, *i.e.*, that there was nothing for the debtor to assume or reject.

Lastly, in response to the landlord's final submission, the debtor stresses that if the lease is assumed and assigned to Stagecoach Management Corporation, funds will be available to satisfy administrative expenses and pay approximately a 10% dividend to unsecured creditors and because of this, the equitable powers which are vested in this Court must be exercised to permit the debtor to assume and assign the lease.

### DISCUSSION

■ As set forth in the Court's memorandum of November 15, 1984, resort must be had to state law to determine the extent of the debtor's interest in the lease. *See*

*Johnson v. First National Bank*, 719 F.2d 270 (8th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984); *In re Lauderdale Motorcar Corp.*, 35 B.R. 544, 11 B.C.D. 517 (Bankr.S.D.Fla.1983); *In re Intermet Realty Partnership*, 26 B.R. 383 (Bankr.E.D.Pa.1983); and *In re Darwin*, 22 B.R. 259 (Bankr.E.D.N.Y.1982) *Cf. Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Under Massachusetts law, M.G.L. ch. 186, § 11, a written fourteen days' notice to quit determines a lease unless the tenant cures existing defaults on or before the day the answer is due in a summary process action.[6] *See also* M.G.L. ch. 239, § 1. While it cannot be debated that "equity does not favor a forefeiture" and that "remedial statutes are to be liberally construed", a tenant who has been served with a fourteen-days' notice to quit and against whom a summary process action has been brought, may only avoid a forfeiture by complying with the specific terms of the statute. *See Ullian v. Les Tuileries, Inc.*, 361 Mass. 863, 281 N.E.2d 229 (1972); *Margosian v. Markarian*, 288 Mass. 197, 192 N.E. 612 (1934); and *Hodgkins v. Price*, 137 Mass. 13 (1884). *See generally Oakes v. Munroe*, 62 Mass. 282 (1851) and Note, The Tenancy at Sufferance in Massachusetts, 44 B.U.L.Rev. 213 (1964).

■ The intervening filing of a bankruptcy petition at best gives the debtor an additional sixty-day grace period to cure existing defaults under § 108(b).[7] The automatic stay of § 362(a)[8] prevents, *inter*

---

**6.** M.G.L. ch. 186, § 11 provides, in relevant part: "Upon the neglect or refusal to pay the rent due under a written lease, fourteen days' notice to quit, given in writing by the landlord to the tenant, shall be sufficient to determine the lease, unless the tenant, on or before the day the answer is due, in an action by the landlord to recover possession of the premises, pays or tenders to the landlord or to his attorney all rent then due, with interest and costs of suit."

**7.** § 108(b) provides, in relevant part: "[I]f applicable law, an order entered in a proceeding, or an agreement fixes a period within which the debtor ... may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period

has not expired before the date of the filing of the petition, the trustee may only file, cure or perform, as the case may be, before the later of—

   (1) the end of such period, including any suspension of such occuring on or after the commencement of the case; and

   (2) 60 days after the order for relief."

**8.** § 362(a), applicable to this case filed in June 1984, provides: "Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—

   (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other

*alia,* the landlord from continuing with the state court summary process action, whereas § 108(b) extends the debtor's right, under state law, to cure the existing default for sixty days after an order for relief is entered. "Subsection ... (b) ... permit[s] the trustee, when he steps into the shoes of the debtor, an extension of time ... for doing some ... act that is *required to preserve the debtor's rights.*" [9] H.R.Rep. No. 595, 95th Cong., 1st Sess. 318 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6275 (emphasis added). *See also In re Santa Fe Development and Mortgage Corp.,* 16 B.R. 165, 8 B.C.D. 704 (Bankr. 9th Cir.1981). "It was thought ... that an extension of time should be given the trustee ... so that the trustee could take the necessary steps to preserve for the estate rights which might otherwise be barred".

2 Collier on Bankruptcy, ¶ 109.04 at 108–9 (15th ed. 1983). The trustee however, acquires only those interests the debtor had. "[I]f the debtor's interests in property are limited, then the estate acquires only those limited interests". *In re Hudson Valley Ambulance Service, Inc.,* 11 B.R. 860, 862 (Bankr.S.D.N.Y.1981). *See also* H.R.Rep. No. 595, supra, at 367–68 and § 541.[10]

■ The Court does not find any conflict between § 362(a) and § 108(b) here but rather concludes that these two sections concern two different matters. As set forth above, § 362(a) stays the continuation of the state court summary process action but does not stay the time for curing the default and reviving the lease. "§ 362(a) ... does not effect the running of specific time periods unlike § 108 which speaks explicitly to that issue." *Bank of the Com-*

---

proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor."

9. § 1107(a) gives a debtor in possession all rights, powers, and duties of a trustee, with exceptions not applicable herein.

10. § 541(a) provides:

The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all of the following property, wherever located:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

(2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—

(A) under the sole, equal, or joint management and control of the debtor; or

(B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

(3) Any interest in property that the trustee recovers under section 543, 550, 553 or 723 of this title.

(4) Any interest in property preserved for the benefit of or ordered transferred to the estate under section 510(c) or 551 of this title.

(5) An interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—

(A) by bequest, device, or inheritance;

(B) as a result of a property settlement agreement with debtor's spouse, or of an interlocutory or final divorce decree; or

(C) as beneficiary of a life insurance policy or of a death benefit plan.

(6) Proceeds, product, offspring, rents, and profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

(7) Any interest in property that the estate acquires after the commencement of the case.

monwealth v. Bevan, 13 B.R. 989, 993, 7 B.C.D. 557, 560 (E.D.Mich.1981). "[S]ection [362(a)] enjoins acts taken by creditors; it does not concern the tolling of time. Section 108 is specifically addressed to limitations of time and the trustee's right to perform in regard thereto." In re Markee, 31 B.R. 429, 431 (Bankr.D.Idaho 1983). See also Johnson v. First National Bank, supra; In re Lauderdale Motorcar Corp., supra, at 548, and 11 B.C.D. at 519 (Bankr. S.D.Fla.1983) ("[a]lthough the automatic stay is a broad and powerful provision, it does not stay the passage of time"); In re Sarasota Land Co., 36 B.R. 563 (Bankr.M. D.Fla.1983); In re Owens, 27 B.R. 946, 10 B.C.D. 444 (Bankr.E.D.Mich.1983); In re Construction Leasing and Investment Corp., 20 B.R. 546 (Bankr.M.D.Fla.1982); and In re Morgan, 23 B.R. 700, 9 B.C.D. 926 (Bankr.E.D.Pa.1982). But see In re Jenkins, 19 B.R. 105 (D.Colo.1982); In re Shea Realty, Inc., 21 B.R. 790 (Bankr.D. Vt.1982); and In re Johnson, 8 B.R. 371, 7 B.C.D. 222 (Bankr.D.Minn.1981).[11] The prevailing view, and that adopted by this Court, where state law imposes a deadline, is that the limited stay of § 108(b) takes precedence over the uncertain stay of § 362(a).

■ To the extent it can be held that both § 362(a) and § 108(b) apply to the instant facts, it is a cardinal rule of statutory construction that under such circumstances, the more specific provision controls. See, e.g., In re McLouth Steel Corp., 20 B.R. 688 (Bankr.E.D.Mich.1982) and In re Rapino, 11 B.R. 651 (Bankr.E.D. N.Y.1981). Section 108(b) would be rendered worthless if it was determined that § 362(a) indefinitely stays a debtor's obligation to cure existing defaults under M.G.L. ch. 186, § 11.

The Court finds support for its position in the case of In re Joe and L., Inc., 15 B.R. 666 (Bankr.D.Mass.1980). In that case, the debtor had filed a motion to dis-

miss the summary process complaint prior to the time the answer was due. Under state law, the filing of a motion to dismiss automatically extends the time to answer ten days from the date the state court rules on the motion to dismiss. The court stated, "[i]f the Court rules against the Motion to Dismiss, the debtor would have 10 days to answer and, presumably, that would be the time within which it would have to avoid termination regardless of the Chapter 11". Id. note 1, at 668. The Court also finds support in the case of In re Foxfire Inn, 30 B.R. 30 (Bankr.S.D.Fla.1983), wherein the court held that "the termination before bankruptcy of a lease pursuant to its terms and applicable State law results in its expiration, even if, as is the case here, the tenant remains in possession as a tenant at sufferance and the landlord has instituted but not yet concluded an eviction proceeding". Id. at 31. See also In re Maxwell, 40 B.R. 231 (N.D.Ill.1984) and In re Bricker, 43 B.R. 344 (Bankr.D.Ariz.1984). But see Executive Square Office Building v. O'Connor and Associates, Inc., 19 B.R. 143, 9 B.C.D. 35 (Bankr.N.D.Fla.1981).

■ The debtor's argument that application of § 108(b) denies it the right to present a defense by way of an answer is not persuasive. Section 108(b) gave the debtor an additional sixty days to file its answer. See In re Martinson, 731 F.2d 543 (8th Cir.1984) and In re Discount Plywood Centers, Inc., 11 B.R. 866, 7 B.C.D. 1041 (Bankr.E.D.Pa.1981). In any event, pursuant to M.G.L. ch. 239, § 8A the debtor, as a tenant of commercial real estate, may not withhold rent as security for alleged wrongdoing on the part of the landlord but instead may only seek to recover damages for breach of a covenant. See In re J.A.G., Inc., 7 B.R. 624 (Bankr.D.Mass. 1980). In commercial lease contexts, the only time a tenant has the right to withhold rent is when there has been either a real or constructive eviction. Id. This is the only

---

**11.** Many of the above-cited cases were concerned with the question of whether § 362(a) or § 108(b) applies to suspend a state statutory right of redemption period following foreclosure. The Court finds that these cases are sufficiently analogous to be cited in support of its conclusions herein.

possible defense to a summary process action and while that matter is not presently before me, not a scintilla of evidence of same has been shown.

■ The Court also concludes that § 365 is of no help to the debtor.[12] The lease was no longer executory when the § 108(b) sixty-day grace period expired. When a contract ceases to be executory or a lease expires, the provisions of § 365 are of no force and effect. *See Good Hope Refineries, Inc. v. Benavides,* 602 F.2d 998 (1st Cir.) *cert. denied,* 444 U.S. 992, 100 S.Ct. 523, 62 L.Ed.2d 421 (1979); *Schokbeton Industries, Inc. v. Schokbeton Products Corp.,* 466 F.2d 171 (5th Cir.1972); *In re Maxwell, supra; In re Anne Cara Oil Co.,* 32 B.R. 643 (Bankr.D.Mass.1983); and *In re Chuck Wagon Bar-B-Que, Inc.,* 7 B.R. 92 (Bankr.D.C.1980). *Cf.* § 365(c)(4) and § 362(b)(9) applicable to cases filed after October 10, 1984.[13] At the time the petition was filed, the lease had terminated pursuant to state law and only the right of revival remained. For this reason, among others, *Moody v. Amoco Oil Co.,* 734 F.2d 1200 (7th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 386, 83 L.Ed.2d 321 (1984) is distinguishable.[14] I would not hesitate to consider the debtor's motion to assume and assign the lease, under § 365, if the lease were still in effect. However, since the lease has terminated, § 365 has no application. "The debtor's right to cure [a] default [under § 365] must ... be read in conjunction with 11 U.S.C. Section 108(b)". *In re Physique Forum Gym, Inc.,* 27 B.R. 691, 693 (Bankr.D.Md.1982). *See also In re Janesville Lodging Ltd.,* 35 B.R. 672 (Bankr.W.D.Wis.1983) and *In re Interstate Restaurant Systems, Inc.,* 26 B.R. 298 (Bankr.S.D.Fla.1982). *But see In re ERA Central Regional Services, Inc.,* 39 B.R. 738 (Bankr.C.D.Ill.1984) and *In re McLouth Steel Corp., supra.*

■ Section 105 has no application here. *See Johnson v. First National Bank, supra; In re Markee, supra; In re Headley,* 13 B.R. 295, 7 B.C.D. 1224 (Bankr.D.Colo. 1981). While the lease is virtually the only asset of the debtor's estate, the proceeds from the sale of which the debtor intends to use to fund a plan of reorganization, equitable considerations do not play a part where a lease has been validly terminated. *See In re Fidelity American Mortgage Co.,* 19 B.R. 568 (Bankr.E.D.Pa.1982). In any event, the Court cannot help but wonder how unsecured creditors will receive a

12. § 365(b) provides, in relevant part:
"(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—
(A) cures, provides adequate assurance that the trustee will promptly cure, such default;
(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
(C) provides adequate assurance of future performance under such contract or lease.

13. § 362(b)(9) provides:
"Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—
Under subsection (a) of this section, of any act by a lessor to the debtor under a lease of nonresidential real property that has terminated by the expiration of the stated term of the lease

before the commencement of or during a case under this title to obtain possession of such property".
§ 365(d)(4) provides in relevant part:
"[I]n a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor."

14. The dissenting Judge in *Moody v. Amoco Oil Co., supra,* noted that the contracts could not be assumed. While he declined to elucidate his reasons, he did state that he believed "the district court was correct when it held that the debtor could not assume the jobbership contract". *Id.* at 1218. The district court opinion has not been published but this Court notes that the district court affirmed the bankruptcy court's decision which applied the time limits of § 108(b) to the debtor's rights to assume the contract.

dividend in light of the stipulation of the secured creditors and the outstanding tax claims.

Accordingly, the relief requested by the debtor must be denied. See attached order.

### ORDER

In accordance with the above, the relief requested in the debtor's motion for reconsideration is DENIED. The Court's order of November 15, 1984 will not be disturbed.